

AO 241   (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF OCT 06 2022
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| United States District Court | District EASTERN |
|---|---|
| Name DEMETRIS FRANK BAILEY JR | Prisoner No. # BJ0941   DEP Case No. 1:22-CV-1273 SAB(HL) |

Place of Confinement
RICHARD J. DONOVAN CORRECTIONAL FACILITY

Name of Petitioner (include name under which convicted)          Name of Respondent (authorized person having custody of petitioner)

DEMETRIS FRANK BAILEY JR          V.   RAYMOND MADDEN

The Attorney General of the State of:

## PETITION

1. Name and location of court which entered the judgment of conviction under attack SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN. 1415 TRUXTUN AVE, BAKERFIELD. CA 93301

2. Date of judgment of conviction OCTOBER 26, 2018

3. Length of sentence 302 YEARS-TO-LIFE

4. Nature of offense involved (all counts) ATTEMPTED MURDER P.C. 664/187 (a), CRIMINAL THREAT P.C. 422. ASSAULT W/FIRARM P.C. 245 (a)(2), dissuading a WITNESS by FORCE OR VIOLENCE P.C. 136.1 (c)(1). PREMEDITATION and deliberation P.C. 189. GREAT bodily INJURY OR death P.C. 12022.53 (c)&(d) P.C. 12022.7, P.C. 12022.5, P.C. 1170.12, P.C. 667 (b)(i) P.C. 667.5

5. What was your plea? (Check one)
   (a) Not guilty ☑
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   _____

   _____

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☑
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐   No ☑

8. Did you appeal from the judgment of conviction?
   Yes ☑   No ☐

AO 241    (Rev. 5/85)

9.    If you did appeal, answer the following:

(a) Name of court    THE COURT OF APPEAL OF CALIFORNIA, FIFTH APPELLATE DISTRICT

(b) Result    DENIED

(c) Date of result and citation, if known    CASE No. F079127    FEBRUARY 7, 2022

(d) Grounds raised    TRIAL COURT INTRODUCE INADMISSIBLE HEARSAY by VOLANDA INVESTIGATION
INSUFFICIENT EVIDENCE TO CONVICT APPELLANT DISSUADING WITNESS BY FORCE OR VIOLENCE
FOURTEENTH AMENDMENT Violation

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court    SUPREME COURT OF CALIFORNIA REVIEW

(2) Result    DENIED

(3) Date of result and citation, if known

(4) Grounds raised    INSUFFICIENT EVIDENCE TO CONVICT APPELLANT DISSUADING WITNESS by
FORCE OR VIOLENCE TC 136.1 (C)(1) FOURTEENTH AMENDMENT Violation

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court    N/A

(2) Result    N/A
N/A

(3) Date of result and citation, if known    N/A

(4) Grounds raised    N/A
N/A

10.    Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☐    No ☑

11.    If your answer to 10 was "yes," give the following information:

(a) (1) Name of court    N/A

(2) Nature of proceeding    N/A
N/A

(3) Grounds raised    N/A
N/A

(3)

AO 241    (Rev. 5/85)

N/A

N/A

N/A

(4)  Did you receive an evidentiary hearing on your petition, application or motion?
    Yes  ☐    No  ☑

(5)  Result _____ N/A _____

(6)  Date of result _____ N/A

(b)  As to any second petition, application or motion give the same information:

(1)  Name of court _____ N/A

(2)  Name of proceeding _____ N/A

N/A

(3)  Grounds raised _____ N/A

N/A

N/A

N/A

N/A

(4)  Did you receive an evidentiary hearing on your petition, application or motion?
    Yes  ☐    No  ☑

(5)  Result _____ N/A

(6)  Date of result _____ N/A

(c)  Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
    (1)  First petition, etc.        Yes  ☑    No  ☐
    (2)  Second petition, etc.     Yes  ☑    No  ☐

(d)  If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12.  State *concisely* every ground on which you claim that you are being held unlawfully.  Summarize *briefly* the *facts* supporting each ground.  If necessary, you may attach pages stating additional grounds and *facts* supporting same.
    CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241    (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: INSUFFICIENT EVIDENCE TO CONVICT PETITIONER DISSUADING WITNESS BY FORCE OR VIOLENCE P.C. 136.1 (C)(1). FOURTEENTH AMENDMENT VIOLATION

Supporting FACTS (state *briefly* without citing cases or law):

( SEE WITHIN PETITION ATTACHED HERETO)

B. Ground two: PETITIONER 302 YEARS TO LIFE SENTENCE WHICH CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT PURSUANT TO THE FEDERAL AND STATE CONSTITUTIONS

Supporting FACTS (state *briefly* without citing cases or law):

( SEE PETITION ATTACHED HERETO)

(5)

AO 241    (Rev. 5/85)

C.  Ground three: INTRODUCE INADMISSIBLE HEARSAY STATESMENTS BY VALANCIA WASHINGTON PURSUANT TO EVIDENCE CODE SECTION 1237 AND PETITIONERS CONVICTIONS IN ALL COUNTS

Supporting FACTS (state *briefly* without citing cases or law): _____

[SEE PETITION ATTACHED]

_____

_____

_____

_____

D.  Ground four: _____ N/A _____

_____ N/A _____

Supporting FACTS (state *briefly* without citing cases or law): _____ N/A _____

_____

_____

_____

_____

_____

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

N/A

_____

_____

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐   No ☑

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a)  At preliminary hearing   ATTORNEY KYLE HUMPHREY, ESQ.
KYLE @ KYLE J HUMPHREY . COM

(b)  At arraignment and plea   ATTORNEY KYLE HUMPHREY ESQ
KYLE @ KYLE J HUMPHREY . COM

AO 241    (Rev. 5/85)

(c)  At trial    ATTORNEY KYLE HUMPHREY ESQ

KYLE @ KYLE J HUMPHREY , COM

(d)  At sentencing    ATTORNEY KYLE HUMPHREY

KYLE @ KYLE J HUMPHREY , COM

(e)  On appeal    ATTORNEY DEREK K. KAWATA, ESQ (SBN 207427)

LAW OFFICE OF ALLEN G. WEINBERG 9454 WILSHIRE BOULEVARD, SUITE 600

BEVERLY HILLS, CALIFORNIA 90212

(f)  In any post-conviction proceeding    N/A

N/A

(g)  On appeal from any adverse ruling in a post-conviction proceeding    N/A

16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes  ☑    No  ☐

17.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes  ☐    No  ☑
(a)  If so, give name and location of court which imposed sentence to be served in the future:  _____
N/A

(b)  Give date and length of the above sentence:  _____

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes  ☐    No  ☑

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

IN PRA Se
_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

APRIL  , 2022
Date

x  _F. D. Bailey_
_____
Signature of Petitioner

(7)

1  DEMETRIS FRANK BAILEY JR. # BJ0941
2  RICHARD J. DONOVAN CORRECTIONAL FACILITY
3  480 ALTA ROAD
4  SAN DIEGO, CA. 92179
5  IN PRO SE
6
7              UNITED STATES DISTRICT COURT
8              EASTERN DISTRICT OF CALIFORNIA
9
10  DEMETRIS FRANK BAILEY JR.
          PETITIONER              CASE NO. _____
11
12      V                         PETITION FOR WRIT OF HABEAS CORPUS
13  RAYMOND MADDEN                 AND MEMORANDUM OF POINTS AND
          RESPONDENT,             AUTHORITIES IN SUPPORT THEREOF
14
15                                28 U.S.C. SECTIONS 2254 & 2255
16
17                   INTRODUCTION
18  1  ON JUNE 23, 2016, PETITIONER TOOK VOLONDA WASHINGTON'S CAR KEYS
19  FROM HER WHILE SHE WAS IN THE HOSPITAL. VOLONDA WAS PETITIONER'S GIRL-
20  FRIEND, BUT THE TWO HAD A TUMULTUOUS RELATIONSHIP, AND PETITIONER DID NOT
21  GET ALONG WITH VOLONDA'S ADULT DAUGHTER, DONEISHA RODRIGUEZ, OR
22  RODRIGUEZ'S BOYFRIEND, DENZEL WASHINGTON, THE ALLEGED CRIMES IN THIS
23  CASE STEM FROM AN ARGUMENT ABOUT THE CAR AND PETITIONER ALLEGEDLY
24  ENTERING VOLONDA'S HOME A FEW DAYS LATER AND COMMITTING CRIMES AGAINST
25  WASHINGTON AND RODRIGUEZ.
26  2.  PETITIONER CONTENDS IN ARGUMENT I THAT REVERAL OF HIS CONVICTIONS IN
27  ALL COUNTS IS REQUIRED BECAUSE OF EVIDENTIARY ERROR IN ALLOWING THE
28  PROSECUTION TO INTRODUCE AN INADMISSIBLE HEARSAY STATEMENT BY

1  VoLonda Pursuant To Evidence Code Section 1237 Affected all Seven counts.

2  3.  Petitioner Further contends in Argument II that Reveral For one of

3  Two counts of dissuading A witness is Required because substantial

4  evidence only supports A conviction as to one of the two victims. Retrial

5  on that count is barred because of the insufficient of evidence claim.

6  4.  In Argument III. Petitioner alleges His 302 years-To-Life

7  Violates the Proscription on cruel and unusual Punishment.

8

9                              II

                          PARTIES

10

11  5.  Petitioner  Demetris Frank Bailey Jr, is a Prisoner of the State of

12  California incarcerated at Richard J. Donovan Correctional Facility.

13  6.  Raymond Madden, is the warden of Richard J. Donovan Correctional

14  Facility. and the Legal custodian of Petitioner

15  7.  _____; is the Secretary of the California Depart-

16  ment of corrections and Rehabilitation (CDCR) and is Responsible For

17  the operation of each of its State Prisons, including Richard J,

18  Donovan Correctional Facility.

19

20                            III

                  STATEMENT OF THE CASE

21

22  8.  Petitioner Demetris Frank Bailey Jr, was charged in an seven-

23  count amended information Failed on August 8. 2017, with Attempted

24  Murder Penal Code Sections 664/187. subd. (a)- count 1, making a

25  criminal threat Penal code Section 422) counts 2 and 3, Assault

26  with a Firearm Penal code Section 245. subd. (a)(2)) counts 4

27  and 5, dissuading a witness by Force or violence Penal code

28  Section 136.1, subd. (c)(1)- counts 6 and 7. As to count 1, it was

1  FURTHER ALLEGED THAT THE OFFENSE WAS COMMITTED WITH PREMEDITATION AND
2  DELIBERATION PENAL CODE SECTION 189), AND THAT PETITIONER PERSONALLY AND
3  INTENTIONALLY DISCHARGED A FIREARM WHICH PROXIMATELY CAUSED GREAT
4  BODILY INJURY OR DEATH PENAL CODE SECTION 12022.53, SUBDS. (C) & (D)).
5  9.  AS TO COUNTS 1, AND 4, IT WAS FURTHER ALLEGED THAT PETITIONER PERSON-
6  ALLY INFLICTED GREAT BODILY INJURY ON THE VICTIM PENAL CODE SECTION
7  12022.7), AS TO ALL COUNTS, IT WAS FURTHER ALLEGED THAT PETITIONER PERSON-
8  ALLY USED A FIREARM PENAL CODE SECTION 12022.5, SUBD. (D)), AND THAT
9  HE SUFFERED FOUR PRIOR SERIOUS OR VIOLENT STRIKE CONVICTIONS PENAL
10 CODE SECTIONS 1170.12, SUBD. (D)-(E); 667, SUBDS.(C)-(J)), THREE PRIOR
11 SERIOUS FELONY CONVICTIONS PENAL CODE SECTIONS 667.5, SUBD. (D)(1)),
12 AND SEVEN PRIOR PRISON CONVICTIONS PENAL CODE SECTION 667.5, SUBD. (B)).
13 (2 CT 393-441.)
14 10. ON AUGUST 23, 2017, FOLLOWING A 10-DAY JURY TRIAL, PETITIONER'S
15 MOTION FOR A MISTRIAL WAS GRANTED DUE TO A LEGAL ERROR. (2CT 514-516.)
16 11.  ON OCTOBER 15, 2018, A SECOND TRIAL COMMENCED. (3 CT 682-684.)
17 12. ON OCTOBER 26, 2018, FOLLOWING A 10-DAY JURY TRIAL, PETITIONER WAS
18 CONVICTED AS CHARGED IN COUNTS 1 THROUGH 7, AND ALL OF THE FIREARM PENAL
19 CODE SECTIONS 12022.53, SUBDS. (B)-(D); 12022.5, SUBD. (D) AND GREAT BODILY
20 INJURY ALLEGATIONS WERE FOUND TRUE PENAL CODE SECTION 12022.7),
21 (3 CT 819-822.)
22 13.  ON OCTOBER 29, 2018, THE PROSECUTION'S MOTION TO DISMISS ALL OF THE
23 PRISON PRIOR ALLEGATIONS PENAL CODE SECTION 667.5, SUBD. (B)) WAS
24 GRANTED. PETITIONER WAIVED HIS RIGHT TO A JURY TRIAL AS TO THE TRUTH OF
25 HIS PRIOR CONVICTIONS. AND FOLLOWING A COURT TRIAL, THE COURT FOUND THE
26 ALLEGATIONS THAT PETITIONER SUFFERED FOUR STRIKE PRIORS AND THREE SERIOUS
27 FELONY CONVICTIONS TRUE.[1]  (4CT 928-935.)

28 1. PRIOR TO SENTENCING, THE PROSECUTION SUBMITTED A SENTENCING STATEMENT

14. ON APRIL 9, 2019, PETITIONER'S MOTION FOR A NEW TRIAL AND ROMERO[2]
MOTION WERE EACH DENIED. PROBATION WAS DENIED, AND THE COURT SENTENCED
PETITIONER TO AN INDEDETERMINATE TERM OF 42 YEARS-TO LIFE PENAL CODE
SECTION 667, SUBD. (E)(2)(A)(III); 1170.12, SUBD.(C)(2)(A)(III) ON COUNT 1,
PLUS 25 YEARS-TO LIFE FOR THE GUN ENHANCEMENT PENAL CODE SECTION
12022.53, SUBD. (D) AND 5 YEAR EACH FOR THE TWO PRIOR SERIOUS FELONY
CONVICTIONS PENAL CODE SECTION 667, SUBD. (A)); AS TO COUNTS 2, 3, 5, 6 AND
7, THE COURT SENTENCED PETITIONER TO CONSECUTIVE TERMS OF 25 YEARS TO
LIFE PENAL CODE SECTIONS 667. SUBD. (E)(2)(A)(III); 1170.12, SUBD. (C)(2)
(A)(III) PLUS 10 YEARS FOR THE GUN ENHANCEMENT PENAL CODE SECTION
12022.5, SUBD. (A)) AND 5 YEARS EACH FOR THE TWO PRIOR SERIOUS FELONY
CONVICTIONS PENAL CODE SECTION 667. SUBD. (A)). THE SENTENCE ON
COUNT 4 AND THE REMAINING ENHANCEMENTS WERE STAYED PURSUANT TO
SECTION 654. PETITIONER WAS ORDERED TO PAY VARIOUS FINES AND FEES AND
WAS AWARDED A TOTAL OF 1,166 DAYS OF CUSTODY CREDIT, CONSISTING OF
1,019 ACTUAL DAYS AND 147 DAYS OF LOCAL CONDUCT CREDIT. (4CT 1036-
1040.)

---

WHEREIN THEY POINTED OUT THAT THE ALLEGED 1984 PRIOR STRIKE AND SERIOUS
FELONY PRIOR FOR PENAL CODE SECTION 207 IN CASE NO. SCO26579 SHOULD BE
DISMISSED BECAUSE IT WAS MISTAKENLY LISTED ON PETITIONER'S RAP SHEET AS
PENAL CODE SECTION 207, WHEN IN FACT IS WAS MISDEMEANOR CONVICTION FOR
PENAL CODE SECTION 270, ALTHOUGH IT IS UNCLEAR WHETHER THE COURT ADDRESSED
THE MISTAKE AT THE TIME OF SENTENCING, THE COURT ONLY RELIED ON THREE
STRIKES PRIORS AND TWO SERIOUS FELONY PRIORS IN CALCULATING SENTENCE.
(1CT 1014-1015.)

2. PEOPLE V. SUPERIOR COURT (ROMERO) (1996) 13 CAL. 4TH 497.

# IV
## STATEMENT OF FACTS

### THE PROSECUTION CASE:

15. DENEISHA RODRIGUEZ LIVED IN FRESNO AND WAS 27 YEARS OLD AT THE TIME OF TRIAL. (11 RT 1624.) VOLONDA WASHINGTON[3] WAS RODRIGUEZ'S MOTHER. (10 RT 1481.) IN JUNE OF 2016 VOLONDA LIVED AT 4705 PANDORA PLACE IN BAKERSFIELD AND WAS DATING PETITIONER (10 RT 1481 - 1482.)

16. RODRIGUEZ'S FORMER BOYFRIEND WAS DENZEL WASHINGTON (10 RT 1482.) RODRIGUEZ ADMITTED THAT IN 2015. SHE WAS CONVICTED OF A CRIME OF MORAL TURPITUDE. (10 RT 1483.) WASHINGTON WAS A CODEFENDANT IN THAT CASE AND WAS ALSO CONVICTED. (10 RT 1483; 11 RT 1641.) WHILE RODRIGUEZ WAS INCARCERATED, PETITIONER HAD MOVED INTO VOLONDA'S HOUSE, AND HE HAD A SET OF KEYS. (11 RT 1636; 1645, 1720.)

17. ON JUNE 8, 2016, WHEN RODRIGUEZ WAS RELEASED FROM PRISON, VOLONDA AND PETITIONER PICKED HER UP, AND SHE STAYED THE NIGHT AT HER MOTHER'S HOUSE. (11 RT 1634 - 1636; 12 RT 1801.) THEREAFTER RODRIGUEZ STAYED MULTIPLE NIGHTS AT A FRIEND'S HOUSE BEFORE RETURNING TO STAY AT VOLONDA'S HOUSE. (10 RT 1484, 12 RT 1801.) WHEN SHE RETURNED, PETITIONER WAS NOT STAYING THERE, BUT HE WAS AT THE HOUSE FREQUENTLY, AND HE WOULD SOME- TIMES STAY OVERNIGHT WITH YOLONDA IN THE MASTER BEDROOM. (10 RT 1484 - 1485.) RODRIGUEZ SLEPT IN THE ROOM WITH TWO TWIN BEDS ACROSS FROM THE MASTER BEDROOM, AND WASHINGTON WOULD OFTEN STAY OVERNIGHT WITH HER, ALTHOUGH A CONDITION OF HER PAROLE WAS THAT

___

3. BECAUSE VOLONDA WASHINGTON AND DENZEL WASHINGTON SHARE THE SAME LAST NAME, VOLONDA WASHINGTON WILL BE REFERRED TO AS "VOLONDA", AND DENZEL WASHINGTON WILL BE REFERRED TO AS "WASHINGTON", VOLONDA AND WASHINGTON ARE NOT RELATED.

COURT PAPER
ATE OF CALIFORNIA
D 113 (REV. 6-72)

1  SHE WAS NOT SUPPOSED TO ASSOCIATE WITH WASHINGTON. (10 RT 1485-

2  1486; 11 RT 1640 - 1641.)

3  18.  ON JUNE 23, 2016. RODRIGUEZ TOOK VOLONDA TO SAN JOAQUIN

4  HOSPITAL AFTER SHE SUFFERED A STROKE AND SLURRED SPEECH. (10 RT

5  1483-1484; 11 RT 1676; 12 RT 1784-1786.) AT THE TIME, VOLONDA AND

6  PETITIONER WERE BROKEN UP, AND RODRIGUEZ HAD NOT SEEN PETITIONER

7  AT THE HOUSE FOR SEVERAL DAYS. (11 RT 1714.) WHEN RODRIGUEZ RETURN-

8  ED WITH WASHINGTON TO VISIT VOLONDA IN THE LATE AFTERNOON,

9  VOLONDA COULD SPEAK AND RESPOND TO QUESTIONS (10 RT 1488 - 1490;

10  12 RT 1786.)

11  19.  WHILE AT THE HOSPITAL, RODRIGUEZ WAITED FOR PETITIONER TO ARRIVE

12  WITH VOLONDA'S CAR THAT HE HAD BEEN USING. (11 RT 1659.) RODRIGUEZ

13  HAD AN APPOINTMENT AT THE PAROLE OFFICE AT AROUND 4:00 P.M. OR 5:00

14  P.M., AND VOLONDA GAVE HER PERMISSION TO USE THE CAR. (10 RT 1490-

15  1491; 10 RT 1515; 11 RT 1653.) RODRIGUEZ AND PETITIONER HAD PRIOR

16  CONFLICTS OVER THE SCHEDULING AND USE OF VOLONDA'S CAR, AND RODRIGUEZ

17  WAS IRRITATED THAT PETITIONER WOULD KEEP WAITING AND IGNORE HER CALLS

18  WHILE SHE WAS WAITING FOR HIM TO RETURN THE CAR. (10 RT 1489; 11 RT 1645-

19  1650.)

20  20.  AFTER PETITIONER ARRIVED AT THE HOSPITAL, AND HEARD RODRIGUEZ GOT

21  INTO AN ARGUMENT AND CURSED AT EACH OTHER. (10 RT 1491; 11 RT 1648-1649,

22  1659.) VOLONDA TOLD PETITIONER THAT SHE NO LONGER WANTED HIM TO

23  DRIVE HER CAR, AND SHE TOOK HER CAR KEYS AND PLACED THEM IN HER PURSE.

24  (10 RT 1489, 12 RT 1765.) AS VOLONDA AND PETITIONER TUSSLED OVER THE

25  PURSE, PETITIONER STATED THAT HE WAS GOING TO TAKE THE CAR, AND

26  VOLONDA REPEATED, "GIVE ME MY KEYS". (10 RT 1490, 1493.) AFTER

27  A NURSE TOLD PETITIONER TO LEAVE, HE SNATCHED THE KEYS FROM

28  VOLONDA'S PURSE AND WAS ESCORTED DOWNSTAIRS. (10 RT 1490, 1493.)

1  VoLonda STATED, "ALL I WANT IS MY KEYS BACK, I JUST WANT MY KEYS
2  BACK." AND SHE ASKED WASHINGTON To RETRIEVE THEM. (10 RT 1495; 12 RT
3  1771.)

4  21.  WASHINGTON WENT AFTER PETITIONER, AND SHORTLY THEREAFTER,
5  RodRIGUEZ FoLLOWED THEM INTO To THE HoSPITAL PARKING LoT. (10 RT 1496-
6  1497.) WASHINGTON ASKED PETITIONER FoR THE CAR KEYS, AND PETITIONER
7  SAiD, "I'LL GIVE You THIS ASS bEFoRE I GIVE You THESE KEYS." (10 RT
8  1498.) WASHINGTON SAiD, "WHAT KiND oF GAY ASS SHiT IS THAT? AND,
9  MAN JUST GIVE ME THE KEYS." (10 RT 1499, 11 RT 1662.) PETITIONER STARTED
10  FLiNCHiNG AT WASHINGTON AS iF HE WAS GoiNG To TAKE A SWiNG, AND
11  WASHINGTON PUNCHED PETITIONER IN THE FACE, AND THEY STARTED To
12  FIGHT. (10 RT 1499-1500.) PETITIONER FELL bACKWARD INTo A CAR AND
13  dROPPED THE KEYS, AND WASHINGTON PICKED THEM UP. (10 RT 1500, 1502.)

14  22.  PETITIONER SAiD, "I'M GoNNA KiLL You, NiGGA, AND I PUT THAT oN
15  MY MoMMA, AND SHE'LL SUCK YoUR diCK, AND SHE IN THE diRT." (11 RT
16  1685.) RodRIGUEZ did NoT TAKE THE THREAT SERiouSLY AND LAUGHED bE-
17  CAUSE PETITIONER SMELLED oF ALCoHoL IN THE HoSPITAL RooM, AND SHE
18  ASSUMED HE HAD bEEN dRiNKiNG. (10 RT 1511-1512.)

19  23.  RodRIGUEZ AND WASHINGTON WALKED bACK INTo THE HoSPITAL AND
20  ToLd VoLoNdA WHAT HAPPENED. (10 RT 1500-1501; 10 RT 1502, 1504.) A
21  FEW MINUTES LATER THEY RETURNED To THE PARKING LoT, AND FoUND
22  PETITIONER STANDING bY VoLoNdA'S CAR. (10 RT 1504-1506.) WASHINGTON
23  EXTENDED HiS HAND To SHAKE PETITIONER'S HAND, bUT PETITIONER
24  RESPoNdED bY SAYING, "HELL No, NiGGA." I'M GoNNA KiLL You." (10 RT
25  1508).

26  24.  RodRIGUEZ SAW bRoKEN GLASS IN FRoNT oF THE CAR AND NoTiCED
27  THAT THE GAS TANK SMELLED LiKE bEER. (10 RT 1509-1510.) SHE did
28  NoT dRiVE THE CAR bECAUSE SHE did NoT KNoW iF THE GAS TANK

1  HAD BEEN TAMPERED WITH. (10 RT 1510.) PAPER WORK AND CDs FROM
2  THE GLOVE COMPARTMENT WERE ALSO MISSING. (10 RT 1511.) AFTER THEY
3  FINISHED INSPECTING THE CAR THEY WENT BACK INTO THE HOSPITAL
4  AND TOLD VOLONDA ABOUT THE MISSING ITEMS AND THE BROKEN GLASS.
5  (10 RT 1511-1512; 11 RT 1698.) THEY LEFT THE HOSPITAL LATER THAT NIGHT
6  AND DROVE VOLONDA'S CAR TO HER HOME WHERE THEY STAYED THE NIGHT.
7  (10 RT 1512-1513, 1524.)
8  25. JUNE 24, 2016. PETITIONER CALLED RODRIGUEZ ON HER MOBILE PHONE,
9  AND WHEN SHE ASKED WHY HE WAS CALLING, HE RESPONDED, "I DON'T
10  HAVE NO REASON TO CALL YOUR FUCKING ASS. I DIDN'T CALL," BEFORE HANG-
11  ING UP. (10 RT 1517-1518.) LATER THAT DAY, RODRIGUEZ RECEIVED
12  ANOTHER PHONE CALL WHERE SHE COULD HEAR PETITIONER IN THE BACK-
13  GROUND SAY, "I NEED A GUN," AND ANOTHER PERSON REPLY," MAN, YOU
14  DON'T NEED NO GUN. YOU NEED TO CLAM DOWN." (10 RT 1518.) RODRIGUEZ
15  BELIEVE THAT PETITIONER ACCIDENTALLY CALLED HER PHONE. (10 RT 1517.)
16  AT AROUND 9:00 P.M., RODRIGUEZ RECEIVED A VOICEMAIL WITH
17  PETITIONER'S VOICE SPEAKING AND CURSING. (10 RT 1519, 1523; 11 RT
18  1668-1670.) A RECORDING OF THE VOICE MAIL WAS PLAYED FOR THE JURY
19  WHERE PETITIONER CALLED RODRIGUEZ A "LITTLE BITCH" AND TOLD HER TO
20  STAY OUT OF HIS BUSINESS. (10 RT 1523; 3 CT 699; PEOPLE'S EXHIBITS 1/1A.)
21  26. JUNE 24, 2016 AT AROUND 11:00 P.M. OR 12:00 A.M., RODRIGUEZ
22  AND WASHINGTON DROVE BACK TO VOLONDA'S HOUSE IN VOLONDA'S CAR.
23  (10 RT 1524-1525; 12 RT 1800.) RODRIGUEZ GOT A CALL FROM VOLONDA,
24  WARNING HER TO BE CAREFUL BECAUSE PETITIONER CALLED VOLONDA
25  AND WAS "TALKING STUPID." (12 RT 1790.)
26  27. WHEN THEY GOT TO THE HOUSE, RODRIGUEZ SAW SOME CLOTHING THAT
27  BELONGED TO PETITIONER IN HER BEDROOM, BUT PETITIONER WAS NOT IN
28  THE HOUSE. (10 RT 1525-1526.) IN THE MASTER BEDROOM, RODRIGUEZ

1  NOTICED THAT THE BED WAS PUSHED A FEW FEET AWAY FROM THE WALL,
2  AND THAT THE SCREWS THAT LOCKED THE WINDOW WERE NOT SECURE. (10 RT
3  1529-1530; 11 RT 1703.) THEY SECURED THE HOUSE, AND WASHINGTON PUT
4  THE BLOCK OF KNIVES FROM THE KITCHEN ON THE NIGHTSTAND IN THE ROOM
5  WHERE THEY SLEPT. (10RT 1537; 12 RT 1796.)
6  28. RODRIGUEZ DID SOME LAUNDRY IN THE SHED IN THE BACKYARD AND TEXTED
7  HER SISTER THAT SHE WAS HOME DOING LAUNDRY. (10RT 1533.) SHE TOOK A
8  SHOWER AND LAY DOWN IN THE BEDROOM TO WATCH TELEVISION. (10 RT 1531,
9  1513.) AFTER SHE PUT THE LAUNDRY INTO THE DRYER, SHE AND WASHINGTON
10 FELL ASLEEP. (10RT 1533-1535.
11 29. RODRIGUEZ LATER AWOKE TO PETITIONER'S VOICE SAYING, "I KNOW YOU
12 MOTHERFUCKERS ARE IN HERE." (11 RT 1580.) RODRIGUEZ HEARD A LOUD
13 BOOM AT THE FRONT OF THE HOUSE. (10RT 1535-1536; 11 RT 1580.)
14 PETITIONER YELLED, "OH, YEAH, YOU THOUGHT I WAS PLAYING, HUH?" (10RT
15 1536.)
16 30. RODRIGUEZ TRIED TO CALL THE POLICE ON HER MOBILE PHONE, BUT SHE
17 WAS UNABLE TO COMPLETE THE CALL. (10RT 1537-1538.) WASHINGTON
18 OPENED THE DOOR, AND WENT INTO THE HALLWAY, AND RODRIGUEZ STUCK HER
19 HEAD INTO THE HALLWAY AND SAW PETITIONER AT THE END OF THE HALLWAY
20 WITH A SMALL REVOLVER. (10 RT 1538-1540; 11 RT 1581.) PETITIONER
21 POINTED THE GUN AT WASHINGTON'S HEAD AND FIRED, BUT THE BULLET
22 MISSED, HITTING A CABINET BEHIND HIM. (10 RT 1541-1542; 11 RT 1611-
23 1612.)
24 31. WASHINGTON PUSHED RODRIGUEZ BACK INTO THE BEDROOM AND REACH-
25 ED FOR A KNIFE WHILE LEANING ON THE DOOR TO KEEP PETITIONER OUT.
26 (10RT 1542-1543; 12 RT 1792.) THE KNIVES FELL TO THE FLOOR, AND
27 WASHINGTON TOLD RODRIGUEZ TO CALL THE POLICE. (10RT 1543; 11 RT
28 1578.) RODRIGUEZ GAVE THE OPERATOR HER NAME AND ADDRESS AND

1    SAID THAT SOMEONE WAS IN THE HOUSE WITH A GUN. (11 RT 1578.)

2    32.   OUTSIDE IN THE HALLWAY, PETITIONER TOLD RODRIGUEZ TO HANG UP

3    THE PHONE AND THAT IF SHE CALLED THE POLICE, HE WAS GOING TO SHOOT BOTH

4    OF THEM. (11 RT 1544, 1589.) RODRIGUEZ HUNG UP THE PHONE, AND WASHING-

5    TON EXITED THE ROOM AND CHARGED PETITIONER PUSHING HIM INTO THE

6    MASTER BEDROOM AND CRASHING INTO THE BED. (10 RT 1543, 1545·1546.)

7    AS WASHINGTON TRIED TO GET THE GUN AWAY FROM PETITIONER, RODRIGUEZ

8    HEARD A GUNSHOT AND WASHINGTON CRY OUT. (10 RT 1546-1547; 11 RT 1706.

9    RODRIGUEZ THEN HEARD ANOTHER GUNSHOT. (11 RT 1706.)

10   33.   RODRIGUEZ PUT ON SOME SWEAT PANTS AND WALKED INTO THE ROOM

11   AND SAW WASHINGTON ON THE FLOOR. BLEEDING FROM HIS LEGS. (10 RT

12   1548; 11 RT 1577-1578.) PETITIONER WALKED BACK DOWN THE HALL-

13   WAY STILL HOLDING THE GUN, AS SHE TRIED TO HELP WASHINGTON GET

14   UP. (10 RT 1548-1550.) PETITIONER SAID, "YOU ALL THOUGHT I WAS PLAYING,

15   HUH? NOW YOU AND YOUR NIGGA BETTER GET THE FUCK OUT." (10 RT 1549.)

16   34.   RODRIGUEZ ASKED IF SHE COULD GET HER BELONGINGS AND TOLD

17   PETITIONER HE HAD ALREADY DONE ENOUGH. (11 RT 1585.) PETITIONER RE-

18   SPONDED." YOU THOUGHT I WAS PLAYING. I TOLD YOU I WAS GONNA KILL

19   YOU." (11 RT 1585.) RODRIGUEZ HELPED WASHINGTON WALK OUT OF

20   THE HOUSE TO THE CAR. BUT PETITIONER TOOK THE CAR KEYS FROM HER.

21   (10 RT 1549-1550.) AS THEY TRIED TO WALK AWAYS, PETITIONER REACHED

22   BACK INTO HIS POCKET WHERE HE HAD PLACED THE GUN, AND RODRIGUEZ

23   TOLD HIM TO STOP AND TO LEAVE THEM ALONE. (10 RT 1550; 11 RT 1586.)

24   35.   PETITIONER POINTED THE GUN AT THEM AND TOLD WASHINGTON TO

25   APOLOGIZE, AND WASHINGTON SAID THAT HE WAS SORRY. (10 RT 1551,

26   11 RT 1588.) PETITIONER SAID HE WAS GOING TO TELL THE POLICE THERE

27   WAS A BURGLAR IN HIS HOUSE THAT HE DID NOT KNOW, AND HE SHOT

28   THE BURGLAR. (10 RT 1551.)

36. BY CONTRAST. ON June 25, 2016, IN Police Officer, RYAN VAUGHAN REPORT NO. 2016-148439, DONEISHA RODRIGUEZ STATED THAT AFTER PLACING THEIR CLOTHING INTO THE DRYER IN THE REAR YARD SHE STARTED TO FALL ASLEEP AT ABOUT 0020-0025 HOURS AND WOKE UP TO PETITIONER BAILEY BANGING ON THE DOOR AND TOLD DENZEL WASHINGTON THAT THE SUSPECT WAS PETITIONER, RODRIGUEZ. STATED THAT BY THE TIME DENZEL WASHINGTON GOT TO THE BEDROOM DOOR THEY HEARD A BANG WHICH SHE BELIEVE WAS THE FRONT DOOR BEING KICKED IN. RODRIGUEZ STATED SHE HEARD LOUD BANGING AT FIRST AND HEARD PETITIONER STATED "I KNOW YOU MOTHERFUCKERS ARE IN HERE." RODRIGUEZ, STATED THAT SHE WAS STANDING IN THE DOORWAY OF THE NORTHEAST BEDROOM WHEN SHE SAW PETITIONER STANDING AT THE OTHER END OF THE HALLWAY (SOUTH) RODRIGUEZ STATED SHE SAW PETITIONER COME DOWN THE HALLWAY WHILE REACHING INTO HIS FRONT POCKET AND THAT SHE THEN SAW DENZEL WASHINGTON COME INTO THE ROOM AND CLOSE THE DOOR AND LEANED UP AGAINST IT AND TOLD HER TO CALL THE POLICE THAT PETITIONER HAD A GUN. PETITIONER WAS TRYING TO KICK THE BEDROOM DOOR OPEN AND TOLD HER, "IF YOU CALLED THE POLICE BITCH I'M GOING TO KILL YOU AND I'M GOING TO SHOOT HIM TOO," RODRIGUEZ, STATED THEN HUNG UP THE PHONE AS PETITIONER HAD GOTTEN THE DOOR OPEN.

37. RODRIGUEZ STATED THAT DENZEL WASHINGTON HAD REACHED AND EITHER GRABBED A KNIFE OR TRIED TO GRAB A KNIFE OFF THE FLOOR AND THAT PETITIONER FIRED THE GUN. RODRIGUEZ STATED THAT DENZEL WASHINGTON CHARGED PETITIONER AND THAT THEY BEGAN TO WRESTLE OVER THE GUN, WHICH SHE LATER DESCRIBED AS A SMALL FRAME CHROME REVOLVER.

38. RODRIGUEZ STATED PETITIONER SHOT 3 MORE TIMES AND THAT SHE HAD HEARD DENZEL WASHINGTON MAKING SOUNDS AS IF HE WERE IN PAIN AND THAT HE WAS ON THE GROUND AND THAT PETITIONER WALKED TO THE END OF THE HALLWAY AND TOLD THEM. "OOH YOU THOUGHT I WAS FUCKING PLAYING

AND "GET THE FUCK OUT". RodRIGUEZ STATED THAT PETITIONER WAS POINTING THE GUN back AND FORTH bETWEEN bOTH HERSELF AND DENZEL WASHINGTON AND WAS TELLING THEM. "YOU bETTER GET YOUR ASS UP OR I'MA SHOOT YOU AGAIN. PAGE 32 OF 54]].

39.     ON JUNE 25, 2016, OFFICER RYAN VAUGHAN, POLICE REPORT NO. 2061-148439, DENZEL WASHINGTON STATED THAT HE AND RodRIGUEZ HEARD A NOISE AS SHE WAS SLEEPING IN HIS LAP. DENZEL WASHINGTON STATED HE GOT bY THE door TO SEE WHO IT WAS AND THAT HE SAW PETITIONER AT THE SOUTH END OF THE HALL NEAR THE THE LIVING ROOM WHEN HE PULLED THE GUN, WHICH HE dEScribed AS A REVOLVER, AND FIRED THE FIRST SHOOT WHICH "FLEW PAST ME" DENZEL WASHINGTON STATED HE THEN WENT INTO HIS bEdROOM AND TRIED TO LOCK THE door AND PETITIONER MANAGED TO GET THROUGH AND HE FELL DOWN. DENZEL WASHINGTON STATED PETITIONER SHOT HIM, AND THAT THEY STARTED TO WRESTLE FOR THE GUN AND HE WAS SHOT AGAIN.

40.     DENZEL WASHINGTON iDENTiFIED PETITIONER AS "DEMETRIUS" AND "MY GIRL'S MOM'S boyFRIEND" DENZEL WASHINGTON STATED HE KNEW PETITIONER AbOUT A MONTH AND WOULD RECOGNIZE HIM IF I SHOWED HIM A PICTURE. I SHOWED DENZEL WASHINGTON A PHOTOGRAPH OF PETITIONER AND ASKED IF HE RECOGNIZE WHO THAT PERSON WAS. DENZEL WASHINGTON STATED THAT HE did, AND STATED THAT'S HIM. PAGE 36 OF 54]].

41.     I ASKED IF PETITIONER EVER TOLD HIM THAT HE WAS GOING TO KILL HIM WHILE INSIDE THE HOUSE AND DENZEL WASHINGTON REPLIED "YEAH". I ASKED IF HE WAS AbLE TO GET OUT OF THE HOUSE AND HE STATED THAT HE WAS. PAGE 36 OF 54]].

42.     AS RodRIGUEZ AND WASHINGTON WALKED down THE STREET, SHE CALLED 911 AGAIN, bUT PETITIONER RodE UP ON HIS biCYCLE AND SAid, "I KNEW YOU WOULD CALL THE POLICE." (IIRT 1589-1590.) RodRIGUEZ SAid THAT SHE WAS NOT ON THE PHONE, AS SHE AND WASHINGTON CONTINUED TO WALK AROUND THE CORNER. (IIRT 1590-1591.) EVENTUALLY, THEY WALKED UP TO A HOUSE, KNOCKED ON THE door ASKED THE OCCUPANTS TO CALL FOR AN AMbULANCE.

AND WASHINGTON WAS TAKEN TO THE HOSPITAL. (11 RT 1591-1592; 12 RT 1786.)

45.    A RECORDING OF THE SECOND 911 CALL WAS PLAYED FOR THE JURY WHERE Rodriguez TOLD THE OPERATOR THAT SHE PREVIOUSLY CALLED AND THAT HER BOY-FRIEND HAD BEEN SHOT IN THE LEG AND STOMACH BY PETITIONER AND PETITIONER WAS AT HER MOTHER'S HOUSE AT 4905 PANDORA. (11 RT 1595-1596; 3 CT 711; PEOPLE'S EXHIBIT 8/8A.)

44.    ON <u>JUNE 24, 2016</u>, JENNIFER CASTRO LIVED AT 4925 PENELOPE PLACE IN BAKERFIELD. (12 RT 1822.) LATE THAT NIGHT, Rodriguez AND WASHINGTON KNOCKED ON THE WINDOW AND ASKED FOR HELP BECAUSE WASHINGTON HAD BEEN SHOT WAS BLEEDING. (12 RT 1823-1824.) WHILE CASTRO WAITED FOR HER FRIEND TO WAKE UP HER FATHER, SHE CRACKED OPEN THE DOOR AND SAW THAT WASHINGTON HAD A PUNCTURE WOUND AND WAS BLEEDING FROM HIS LEG, (12 RT 1825-1829.)

45.    WASHINGTON WAS AFRAID, IN PAIN, AND PANICKED. (12 RT 1829.) CASTRO'S MOTHER CALLED THE POLICE, AND CASTRO'S PARENTS HELPED WASHINGTON AND TRIED TO STEM THE BLEEDING. (12 RT 1829, 1831.) WASHINGTON KEPT SAYING, "OH, HE SHOT ME, HE SHOT ME," BUT WHEN THEY ASKED WHO SHOT HIM, HE DID NOT IMMEDIATELY RESPOND WITH A NAME. (12 RT 1830.) RodrigueZ SAID THAT AN OLDER MAN SHOT WASHINGTON, BUT LATER, SHE AND WASHINGTON SAID THAT Rodriguez's MOTHER'S BOYFRIEND WAS THE PERSON WHO SHOT WASHINGTON. (12 RT 1830-1831.).)

46.    ON <u>JUNE 25, 2016</u>, AROUND 1:17 A.M. BAKERFIELD POLICE DEPARTMENT OFFICER ERIC HARDIN WAS DISPATCHED TO 4925 PENELOPE PLACE WHERE HE FOUND WASHINGTON SITTING IN A CHAIR IN THE FRONT YARD WEARING ONLY A WHITE T-SHIRT AND BLUE BOXER BRIEFS. (12 RT 1835-1837.) WASHINGTON WAS HUNCHED OVER, PUTTING PRESSURE ON HIS STOMACH, WHILE BLOOD WAS FLOWING FROM HIS STOMACH AND DOWN HIS LEGS, (12 RT 1836.) WASHINGTON HAD A GUNSHOT WOUND TO HIS LOWER LEFT ABDOMEN AND HIS UPPER RIGHT THIGH

AND WAS HAVING TROUBLE SPEAKING AND BREATHING; (12 RT 1836, 1839.) WASHINGTON SAID THAT HIS GIRLFRIEND'S MOM'S BOYFRIEND SHOT HIM WITH A SMALL BLACK REVOLVER. (12 RT 1840.) HARDIN ONLY SPOKE TO WASHINGTON FOR A FEW MINUTES, BUT HE BELIEVED THAT WASHINGTON WAS BEING SLIGHTLY UNCOOPERATIVE AND WITHHOLDING DETAILS OF WHAT HAPPENED. (12 RT 1840, 1844-1845.) WASHINGTON WAS TAKEN BY AMBULANCE TO KERN MEDICAL CENTER (12 RT 1839-1842.))

47.    WASHINGTON SUFFERED A FRACTURED RIB AND GUNSHOT WOUNDS TO THE RIGHT THIGH, LEFT HIP, AND UPPER RIGHT ABDOMEN, WHICH WERE LIFE-THREATENING. (12 RT 1749-1750, 1252, 1254, 1256.) WASHINGTON UNDER-WENT SURGERY TO REPAIR TWO HOLES IN HIS DUODENUM AND REMOVED HIS RIGHT KIDNEY. (12 RT 1757.).

48.    OFFICER CHRISTOPHER MOORE ARRIVED AT 4925 PENELOPE PLACE AT AROUND 1:30 A.M. AND CONDUCTED A RECORDED INTERVIEW OF RODRIGUEZ (12 RT 1849-1852.) RODRIGUEZ WAS UPSET AND CRYING. (12 RT 1851.) RODRIGUEZ STATED THAT WHEN SHE HEARD YELLING AND BANGING ON THE FRONT DOOR OF THE HOUSE, SHE DID NOT HAVE ANY CLOTHES ON AND WAS TRYING TO GET DRESSED. (12 RT 1856.) SHE DESCRIBED THE DOOR OPENING AS "BOOM, AND THE WHOLE F'ING DOOR JUST CAME IN." (12 RT 1857.) WHEN WASHINGTON STEPPED INTO THE HALLWAY, THERE WAS A GUNSHOT, AND LATER, SHE HEARD MORE SHOTS FIRED. (12 RT 1857-1858.) RODRIGUEZ DESCRIBED THE GUN AS "A LITTLE GUN, AND SHE IDENTIFIED PETITIONER AS THE SHOOTER. (12 RT 1860, 1863.) SHE EXPLAINED THE STRUGGLE FOR THE GUN IN THE MASTER BEDROOM. (12 RT 1862.))

49.    A RECORDING OF THE INTERVIEW WAS PLAYED FOR THE JURY WHERE RODRIGUEZ STATED THAT PETITIONER "BUSTED" DOWN THE DOOR AND FIRED A SHOT SO WASHINGTON TRIED TO WRESTLE THE GUN AWAY FROM HIM, AND THEN PETITIONER FIRED THREE MORE SHOTS, AND WASHINGTON GOT HIT IN THE LEG AND

STOMACH. (11 RT 1727-1732; 3 CT 715-717, 723-726; PEOPLE'S EXHIBITS 1)/26A & 27/27A.) Rodriguez said that she called 911 from inside the house, but she hung up because Petitioner said that he was going to shoot if she got on the phone. (3 CT 717-718.) After they went outside, Rodriguez tried to call 911 again, but Petitioner followed them on his bicycle. (3 CT 718; 729-732.) She told Petitioner that she did not call the police and to "please just leave," and Petitioner rode back toward the house. (3 CT 718-719, 737-738.) Rodriguez said that her mother was in the hospital, and she was staying at her mother's house, and her mother told Petitioner not to come back to the house that night, and that she was instructed to change the locks in the morning. (3 CT 720-721.).

50.   Officer Damian Romero arrived at 4705 Pandora Place at around 1:30 a.m. while Petitioner was exiting the front door of the house holding a mobile. (12 RT 1955-1956.) Petitioner was taken into custody. (12 RT 1956-1957; 1959.).)

51.   Sergeant Christopher Feola went to 4705 Pandora Place at around 3:00 a.m. and did a quick walk-through of the scene and a canvas of the neighborhood with Detective Vaughn. (12 RT 1962-1964.) At 5:30 a.m. back at the police station, Feola and Vaughn conducted a tape recorded interview of Rodriguez, and the interview was played for the jury. (11 RT 1616-1617; 12 RT 1969, 1975; People's Exhibits 66/66 A.)

52.   During the interview, Rodriguez stated that after she saw Petitioner reach into his pocket, Washington ran into the bedroom and said that Petitioner had a gun. (12 RT 1988, 1990.) The gun was silver, and her description was consistent with the gun being a revolver. (12 RT 1992-1993.) After Washington closed the bedroom door, she heard the first gun-shot, but she did not know where the shot originated or if it hit anything. (12 RT 1989-1991.).)

53. FEOLA AGREED THAT RODRIGUEZ NEVER STATED THAT SHE LOOKED DOWN THE HALLWAY AND SAW PETITIONER RAISE THE GUN, PULL THE TRIGGER, AND SHOOT IN THE DIRECTION OF WASHINGTON. (12 RT 1991.) ALTHOUGH SHE SAID THAT PETITIONER BROKE THROUGH THE FRONT DOOR BECAUSE HE HAD NO KEYS, THE FRONT DOOR OF THE HOUSE DID NOT APPEAR TO HAVE BEEN KICKED IN. (12 RT 1989.))

54. AT THE CONCLUSION OF THE INTERVIEW, RODRIGUEZ'S MOBILE PHONE WAS SEIZED TO EXAMINE THE VOICEMAIL MESSAGE, CALL LOG, AND TEXT MESSAGES. (12 RT 1970).)

55. DETECTIVE DANIEL McCLIVE PERFORMED A FORENIC EXAMINATION OF RODRIGUEZ'S MOBILE PHONE USING THE CELLBRITE PROGRAM. (12 RT 1805-1815.) ON JUNE 24, 2016, AT 9:06 P.M. RODRIGUEZ RECEIVED A SIX MINUTE AND 11 SECOND VOICEMAIL MESSAGE ON HER PHONE. (12 RT 1819.) SHE ALSO SENT A TEXT MESSAGE TO HALI RODRIGUEZ ON JUNE 24, 2016, AT 11:09 P.M. STATING, "LoL, I'VE GOT TO DO LAUNDRY TOO. SIS." (12 RT 1819.)

56. AT AROUND 7:58 A.M., FEOLA AND VAUGHN TOOK RODRIGUEZ TO SAN JOAQUIN HOSPITAL WHERE THEY CONDUCTED A TAPE RECORDED INTERVIEW OF VOLONDA WASHINGTON. (12 RT 1783, 1971-1973; PEOPLE'S EXHIBIT 64.) AT THE TIME, VOLONDA WAS RESPONSIVE AND ABLE TO ANSWER QUESTIONS. (12 RT 1974.).)

57. VOLONDA TESTIFIED THAT IN JUNE OF 2016, SHE LIVED AT 4905 PANDORA PLACE AND HAD BEEN DATING PETITIONER FOR ABOUT EIGHT MONTHS. (12 RT 1902, 1904.) PETITIONER STAYED AT HER HOUSE AND SLEPT IN THE MASTER BEDROOM WITH HER. (12 RT 1904-1905.) HE ALSO KEPT HIS BELONGINGS AT HER HOUSE AND CAME AND WENT AS HE PLEASED. (12 RT 1944-1945.) DONEISHA RODRIGUEZ WAS HER DAUGHTER, AND DENZEL WASHINGTON USED TO DATE RODRIGUEZ. (12 RT 1903.) WHEN RODRIGUEZ GOT OUT OF JAIL, VOLONDA LET HER STAY AT THE HOUSE AND GAVE HER PERMISSION TO LET

16.

WASHINGTON STAY THE NIGHT. (12 RT 1905, 1907.).)

58    IN JUNE 2016, VOLONDA HAD A STROKE AND WAS DIAGNOSED WITH
MENINGITIS. (12 RT 1907.) WHILE SHE WAS AT SAN JOAQUIN HOSPITAL,
PETITIONER CAME TO VISIT, AND SHE ASKED HIM FOR HER CAR KEYS, AND HE
SAID HE WOULD COME BACK. (12 RT 1909.) WASHINGTON ASKED VOLONDA IF SHE
WANTED HER CAR KEYS BACK, AND SHE SAID YES. (12 RT 1909.) WASHINGTON,
RODRIGUEZ AND PETITIONER ALL WENT OUTSIDE. (12 RT 1909.) THE NEXT THING
SHE REMEMBERED WAS BEING ADMITTED AT CEDARS-SINAI HOSPITAL IN
LOS ANGELES THAT SUMMER. (12 RT 1910, 1919.) VOLONDA HAD ISSUES
WITH HER MEMORY, AND A DOCTOR EXPLAINED IT COULD BE DUE TO THE
STROKE AND MENINGITIS. (12 RT 1911, 1931.).)

59.    VOLONDA DID NOT REMEMBER FIGHTING OVER A PURSE WHILE SHE WAS IN
SAN JOAQUIN HOSPITAL OR EVER SPEAKING TO THE POLICE WHILE AT THE HOSPITAL.
(12 RT 1911-1912; 1916-1918.) VOLONDA DID NOT BELIEVE THAT PETITIONER AND
AND RODRIGUEZ EVER HAD ISSUES REGARDING HER CAR, AND RODRIGUEZ NEVER
ASKED TO USE HER CAR. (12 RT 1946-1947.) VOLONDA WOULD LET PETITIONER
DRIVE HER CAR FROM TIME TO TIME, AND HE WAS THE ONLY PERSON THAT SHE SHARED
THE CAR WITH. (12 RT 1946, 1951.)

60.    VOLONDA'S JUNE 25, 2016, TAPE RECORDED INTERVIEW WITH FEOLA AND
VAUGHAN WAS PLAYED FOR THE JURY, BUT SHE DID NOT RECALL THE CONVERSATION
(12 RT 1921-1924; 3 CT 760; PEOPLE'S EXHIBIT 64.) DURING THE INTERVIEW,
VOLONDA EXPLAINED THAT PETITIONER WAS HER BOYFRIEND OF ABOUT A YEAR.
(3 CT 760.) PETITIONER CAME TO THE HOSPITAL TWO DAYS PRIOR, AND THEY
GOT INTO AN ARGUMENT OVER HER CAR KEYS, AND PETITIONER TOOK THE KEYS AND LEFT.
(3 CT 760.) WASHINGTON FOLLOWED PETITIONER AND RETRIEVED HER KEYS, AND
PETITIONER CALLED HER AND SAID, "YOU JUST GAVE THAT BOY A DEATH WISH,"
(3 CT 760-761) VOLONDA GOT ANGRY AND TOLD PETITIONER THAT SHE DID NOT

17

1 | WANT HIM AT HER HOUSE, BUT SHE DID NOT KICK HIM OUT. (3 CT 763-764.)
2 | VOLONDA HAD NEVER SEEN PETITIONER OR WASHINGTON WITH A FIREARM (3 CT 765.).)
3 | U.    ON _____ CALIFORNIA SUPREME COURT DENIED APPELLANTS
4 | REVIEW THIS EXHAUSTS PETITIONER'S STATE REMEDIES. ( SEE AS EXHIBIT A.)
5 | ATTACHED HERETO.

6 |

7 |                          $\bigtriangledown$

8 |                    CONTENTIONS

9 |  I.    THE TRIAL COURT COMMITTED REVERSIBLE
10 |       ERROR WHEN IT ALLOWED THE PROSECUTION
11 |       TO INTRODUCE AN INADMISSIBLE HERESAY
12 |       STATEMENTS BY VOLONDA WASHINGTON
13 |       PURSUANT TO EVIDENCE CODE SECTION 1237
14 |       AND PETITIONERS CONVICTION IN ALL COUNTS
15 |       IS REQUIRED

16 |

17 |  II.   REVERSAL OF PETITIONERS CONVICTION IN
18 |       COUNT 7 IS REQUIRED BECAUSE THERE WAS
19 |       INSUFFICIENT EVIDENCE TO CONVICT PETITIONER
20 |       OF DISSUADING A WITNESS BY FORCE OR VIOLENCE
21 |       ( SECTION 136.1. SUBD. (C) (1) IN VIOLATION OF HIS
22 |       FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO
23 |       PROOF OF EACH ELEMENT OF THE CHARGE BEYOND
24 |       A REASONABLE DOUBT

25 |

26 |

27 |

28 |

III.    THE TRIAL COURT ERRED IN SENTENCING
PETITIONER TO AN INDETERMINATE TERM OF
302 YEARS TO LIFE BECAUSE THE SENTENCE
CANNOT BE SERVED IN HIS LIFETIME, IS
TANTAMOUNT TO LIFE WITHOUT THE POSSIBILITY
OF PAROLE, AND IS A LEGAL FICTION WHICH
CONSTITUTES CRUEL AND/OR UNUSUAL
PUNISHMENT PURSUANT TO THE FEDERAL
AND STATE CONSTITUTIONS

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1.    THE TRIAL COURT COMMITTED REVERSIBLE
ERROR WHEN IT ALLOWED THE PROSECUTION
TO INTRODUCE AN INADMISSIBLE HERESAY
STATEMENT BY VOLONDA WASHINGTON
PURSUANT TO EVIDENCE CODE SECTION 1237
AND PETITIONERS CONVICTIONS IN ALL
COUNTS IS REQUIRED

A. INTRODUCTION

Following a JURY TRIAL, PETITIONER WAS CONVICTED OF PREMEDITATED
ATTEMPTED MURDER (PENAL CODE SECTIONS 664 / 187, subd. (a)) OF DENZEL
WASHINGTON IN COUNT 1; MAKING A CRIMINAL THREAT PENAL CODE SECTION
422) AGAINST DENZEL WASHINGTON IN COUNT 2 AND AGAINST DONEISHA

Rodriguez in count 3; Assault with a firearm (Penal Code Section 245. subd. (a) (2) on Denzel Washington in count 4 and on Doneisha Rodriguez in count 5; And dissuading a witness by Force or violence Penal code Section 136.1, subd (c) (1) against Doneisha Rodriguez in count 6 and Denzel Washington in count 7.

Petitioner submits that the court prejudically erred in admitting the out-of-court statement made by Volonda Washington to law enforcement officials under the past recollection recorded exception to the hearsay rule set forth in evidence code Section 1237, as such, petitioner's conviction in all counts is required.

## B. THE EVIDENCE CODE SECTION 402 HEARING

During petitioner's First trial, an evidence code Section 402 Hearing was held where trial counsel objected to Volonda's interview with police being admitted pursuant to evidence code Section 1237 [4]. (4 RT 773-818.) At the Hearing, Volonda testified that she had a stroke and meningitis and had no memory of being at the San Joaquin Hospital in June 2016, or of any incident that took place between petitioner, Rodriguez or Washington over her car keys, or of ever speaking to any detectives from the Bakersfield Police Department. Even after listening to her tape recorded statement, she had no memory of making those statements, and she could not attest to the truth or accuracy of those statements. (4 RT 775-779; 793-795.)

---

[4]. At the instant trial, the parties stipulated to incorporate the same ruling by the court that took place at the First trial. (10 RT 1455.)

ULTIMATELY, THE COURT FOUND THAT ALL OF THE ELEMENTS OF EVIDENCE CODE SECTION 1237 WERE MET, AND DESPITE TRIAL COUNSEL'S OBJECTION, THE PROSECUTION WOULD BE ALLOWED TO PLAY A RECORDING OF THE INTERVIEW TO THE JURY [5]. (4RT 817.)

C. <u>THE PROCEEDINGS AT THE INSTANT TRIAL</u>

AT PETITIONER'S RETRIAL, VOLONDA TESTIFIED THAT SHE HAD NO MEMORY OF EVER SPEAKING TO THE POLICE AT THE HOSPITAL, DUE TO THE FACT THAT SHE HAD TWO STROKES AND MENINGITIS. (12 RT 1907, 1911, 1931) VOLONDA ONLY RECALLED THAT WHILE SHE WAS IN THE HOSPITAL, PETITIONER CAME TO VISIT HER, AND SHE ASKED HIM FOR HER CAR KEYS, AND THAT HE SAID HE WOULD COME BACK. (12 RT 1909) WASHINGTON ASKED VOLONDA IF SHE WANTED HER CAR KEYS BACK, AND SHE SAID YES. (12 RT 1909.) NEXT, WASHINGTON, RODRIGUEZ AND PETITIONER ALL WENT OUTSIDE, BUT SHE HAD NO MEMORY OF WHAT TOOK PLACE AFTER THAT. (12 RT 1909-1910, 1919.)

OVER DEFENSE OBJECTION, THE PROSECUTION WAS ALLOWED TO PLAY FOR THE JURY VOLONDA'S RECORDED INTERVIEW OF JUNE 2016, WITH SERGEANT FEOLA AND DETECTIVE VAUGHAN, DESPITE HER HAVING NO RECOLLECTION OF EVER SPEAKING TO THE OFFICERS. (12 RT 1921-1924; 3 CT 760; PEOPLE EXHIBIT 64.) ON THE RECORDING, VOLONDA EXPLAINED THAT PETITIONER WAS HER BOYFRIEND OF ABOUT A YEAR. (1 CT 760.) WASHINGTON FOLLOWED PETITIONER AND RETRIEVED HER KEYS, AND PETITIONER CALLED HER AND SAID, "YOU JUST GAVE THAT BOY A DEATH

5. ALTHOUGH THE COURT RECOGNIZED THAT THE WRITING OR TRANSCRIPT OF THE INTERVIEW SHOULD BE READ INTO EVIDENCE. BUT THE WRITING ITSELF MAY NOT BE RECEIVED INTO EVIDENCE. THE COURT OPTED TO PLAY THE TAPE RECORDING FOR THE JURY. (4 RT 818.)

WISH" (3CT 760-761.) Yolonda Got ANGRY AND Told PETITIONER
THAT SHE did NOT WANT HIM AT HER HOUSE, buT SHE did NOT KICK HIM
OUT. (3 CT 763-764.)

## D. DISCUSSION

Evidence Code Section 1237 CREATES A NARROW EXCEPTION To THE
HERESAY RULE THAT is JuSTiFied by THE deClARANT's Ability To ATTEST To THE
TRUST WORTHINESS OF His or HER OUT-OF-COURT STATEMENT." THE
MOTIVE beHIND [EVIDENCE Code] SECTION 1237 IS To Allow PREVIOUSLY
RECOrded STATEMENTS INTO EVidENCE WHERE THE TRUSTWORTHINESS OF
THE CONTENTS OF THOSE STATEMENTS IS ATTESTED To by THE MAKER, SubJECT
To THE TEST OF CROSS-EXAMINATION ...." ( PEOPLE V. SIMMONS (1981) 123
CAL. APP. 3d 677, 682 ( SIMMONS), AbROGATED oN oTHER GROUNDS AS
RECOGNIZEd by PEOPLE V. GUNDER ( 2007) 151 CAL. APP. 4TH 412.) WHILE
EVIDENCE Code SECTION 1237 RECOGNIZES THAT A WITNESS' MEMORY CON-
CERNING AN OUT-OF-COURT STATEMENT HE or SHE MAdE IS LIKELY To FAdE OVER
TIME, THE WITNESS MUST HAVE SoME RECOLLECTION OF MAKING THE STATEMENT
To ENSURE THE STATEMENT'S RELIAbILITY AND TRUST WORTHINESS. ( SEE
SIMMONS, SUPRA, 123 CAL. APP. 3d AT PP. 682-683.) THE EXCEPTION'S REQUIRED
TRUST WORTHINESS IS NoT ESTAbLISHED WHEN A WITNESS HAS No RECOLLECTION
OF MAKING THE STATEMENT OR No MEMORY OF ENGAGING IN THE CONVERSATION
IN WHICH THE STATEMENT WAS MAdE. (SEE EVidENCE Code, (WEST'S ANN)
SECTION 1237, COMMENT, P. 225 ["SUFFICIENT ASSURANCE OF THE TRUST-
WORTHINESS OF THE STATEMENT IS PROVidEd IF THE deClARANT IS AVAILAbLE
To TESTIFY THAT HE MAdE A TRUE STATEMENT"].) OTHERWISE, THE WITNESS
Would ONLY bE SPECULATING AbOUT THE TRUTH OF THE STATEMENT OR CON-
VERSATION WHICH Would CARRY No EVidENTIARY VALUE. (SEE SIMMONS,
SUPRA, 123 CAL. APP. 3d AT PP. 683-684.)

1 | AN PETITIONER COURT REVIEWS A TRIAL COURT'S RULINGS ON THE ADMISSION
2 | OF EVIDENCE UNDER EVIDENCE CODE SECTION 1237 FOR AN ABUSE OF DISCRETION.
3 | (SEE PEOPLE V. COWAN (2010) 50 CAL. 4TH 401, 467.)

4 |      HERE, THE PROSECUTION FAILED TO ESTABLISH A PROPER FOUNDATION FOR
5 | VOLONDA'S STATEMENT BECAUSE SHE HAD NO RECOLLECTION OF MAKING THE STATEMENT
6 | OR HAVING THE CONVERSATION WITH FEOLA AND VAUGHAN AT THE HOSPITAL IN
7 | WHICH THE STATEMENT WAS MADE. VOLONDA TESTIFIED REPEATEDLY THAT SHE HAD
8 | NO MEMORY OF SPEAKING TO THE OFFICERS WHILE SHE WAS AT THE HOSPITAL. [1] RT
9 | 1911-1912, 1916-1918, 1921-1924.) BECAUSE VOLONDA COULD NOT REMEMBER
10 | SPEAKING TO FEOLA AND VAUGHAN OR TELLING THEM, IN PARTICULAR THAT AFTER
11 | WASHINGTON RETRIEVED HER KEYS FROM THE PETITIONER, PETITIONER CALLED HER
12 | AND SAID, "YOU JUST GAVE THAT BOY A DEATH WISH" [3CT 760-761.) THAT STATE-
13 | MENT WAS NOT ADMISSIBLE UNDER EVIDENCE CODE SECTION 1237, AND THE STATE-
14 | MENT SHOULD NOT HAVE BEEN PLAYED FOR THE JURY OR READ INTO EVIDENCE.
15 | (SIMMONS, SUPRA, 123 CAL. APP. 3d AT PP. 683-684.)

16 |
17 | ## E. THE ERRONEOUS ADMISSION VOLONDA'S RECORDED
18 | ## STATEMENT WAS PREJUDICIAL AND REVERSAL IS REQUIRED

19 |      AS A GENERAL RULE, PREJUDICE FROM THE ERRONEOUS ADMISSION OF EVID-
20 | ENCE IS GOVERNED UNDER THE STANDARD SET FORTH IN PEOPLE V. WATSON (1956)
21 | 46 CAL. 2d 818, 836. "[A]FTER AN EXAMINATION OF THE ENTIRE CAUSE, INCLUDING
22 | THE EVIDENCE." REVERSAL A REQUIRED ONLY IF THE COURT IS OF THE OPINION
23 | THAT IT IS REASONABLY PROBABLE THAT A RESULT MORE FAVORABLE TO THE APPEALING
24 | PARTY WOULD HAVE BEEN REACHED IN THE ABSENCE OF THE ERROR." [PEOPLE V.
25 | CAHILL (1993) 5 CAL. 4TH 478. 509-510.) THIS COURT SHOULD CONCLUDE THE ERROR
26 | IN ADMITTING THE INADMISSIBLE RECORDED INTERVIEW WAS PREJUDICIAL. IT
27 | IS REASONABLY PROBABLE THAT A RESULT MORE FAVORABLE WOULD HAVE RESULTED
28 | HAD THE COURT NOT ADMITTED VOLONDA'S RECORDED STATEMENT.

1   PETITIONER'S DEFENSE WAS THAT HE did NOT COMMIT THE CHARGED CRIMES,
2   AND THE PROSECUTION'S STAR WITNESS, DONEISHA RODRIGUEZ, WAS A LIAR AND
3   CONVICTED FELON WHO WANTED PETITIONER OUT OF HER MOTHER'S HOUSE AND LIFE
4   SO THAT SHE COULD HAVE UNFETTERED USE OF THE HOUSE AND CAR. FURTHERMORE,
5   IT WAS RODRIGUEZ WHO USED DENZEL WASHINGTON, HER BOYFRIEND AT THE
6   TIME, TO THREATEN, INTIMIDATE AND BEAT UP PETITIONER TO GET HIM TO LEAVE
7   VOLONDA'S HOUSE. [13 RT 2109, 2112-2118.] WASHINGTON, WHO SUSTAINED
8   MULTIPLE GUNSHOT WOUNDS DURING A SCUFFLE WITH PETITIONER, did NOT TESTIFY
9   AT TRIAL. RODRIGUEZ ADMITTED THAT IN 2015. SHE AND WASHINGTON WERE
10  CO-DEFENDANTS IN A CASE WHERE THEY WERE CONVICTED OF CRIMES OF MORAL
11  TURPITUDE. [10 RT 1483, 11RT 1641.]
12      VOLONDA'S RECORDED POLICE INTERVIEW WAS A KEY COMPONENT OF THE
13  PROSECUTION CASE BECAUSE IT GAVE CREDIBILITY TO RODRIGUEZ'S TESTIMONY
14  THAT PETITIONER TOOK VOLONDA'S CAR KEYS AND MADE DEATH THREATS AGAINST
15  WASHINGTON AFTER WASHINGTON RETRIEVED THE KEYS FROM PETITIONER. VOLONDA'S
16  STATEMENT THAT AFTER WASHINGTON RETRIEVED HER CAR KEYS, PETITIONER CALLED
17  HER AND SAID," YOU JUST GAVE THAT BOY A DEATH WISH," WAS PARTICULARLY
18  DAMMING. [3 CT 760-761.]
19      HAD VOLONDA'S RECORDED STATEMENT BEEN PROPERLY EXCLUDED FROM
20  THE EVIDENCE IN THIS CASE, IT IS REASONABLY PROBABLE THAT ONE OR MORE JURORS
21  WOULD HAVE HAD A REASONABLE DOUBT AS TO RODRIGUEZ'S CREDIBILITY AND
22  WHETHER PETITIONER COMMITTED ALL OF THE CHARGED CRIMES.
23      BECAUSE IT IS REASONABLY PROBABLE THAT, BUT FOR THE ERRONEOUS
24  ADMISSION OF VOLONDA'S RECORDED HEARSAY STATEMENT, PETITIONER
25  WOULD HAVE ACHIEVED A MORE FAVORABLE RESULT AT TRIAL. REVERSAL IS
26  REQUIRED. [PEOPLE V. WATSON, SUPRA, 46 CAL. 2d AT P. 836.]

II.    REVERSAL OF PETITIONER'S CONVICTION IN
COUNT 7 IS REQUIRED BECAUSE THERE WAS
INSUFFICIENT EVIDENCE TO CONVICT
PETITIONER OF DISSUADING A WITNESS BY
FORCE OR VIOLENCE (SECTION 136.1. SUBD.(c)(1)
IN VIOLATION OF HIS FOURTEENTH AMENDMENT
DUE PROCESS RIGHT TO PROOF OF EACH ELEMENT
OF THE CHARGE BEYOND A REASONABLE DOUBT

A.    INTRODUCTION

Following a jury trial, petitioner was convicted in count 7 of dissuading a victim of a crime from making a report to law enforcement by force or violence. The victim in this count was Denzel Washington, however because petitioner's threats not to call the police were only directed at Doneisha Rodriguez,[6] who was on her mobile phone at the time, petitioner's conviction in count 7 must be reversed as there was insufficient substantial evidence that he maliciously tried to prevent or discourage Washington from making a report that he was a victim of a crime to law enforcement. (See CALCRIM No. 2622[7])

---

6. Petitioner was convicted of Penal Code section 136.1, subdivision (c)(1) in count 6 against Doneisha Rodriguez and he does not challenge the sufficiency of evidence as to that count.

7. CALCRIM No. 2622, as given here, provides:

THE DEFENDANT IS CHARGED IN COUNT 1 WITH INTIMIDATING A
WITNESS IN VIOLATION OF PENAL CODE SECTION 136.1.

## B.    STANDARD OF REVIEW

ON APPEAL A REVIEWING COURT MUST REVIEW THE ENTIRE RECORD IN A LIGHT FAVORABLE TO THE JUDGMENT BELOW AND DETERMINE WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE CONCLUSION OF THE TRIER OF FACT THAT

TO PROVE THAT THE DEFENDANT IS GUILTY OF THIS CRIME, THE PEOPLE MUST PROVE THAT:

1. THE DEFENDANT MALICIOUSLY TRIED TO PREVENT OR TRYING TO DISCOURAGE, PREVENTED OR DISCOURAGED DENZEL WASHINGTON FROM MAKING A REPORT THAT HE WAS A VICTIM OF A CRIME TO A LAW ENFORCEMENT AGENCY.

2. DENZEL WASHINGTON WAS A WITNESS / CRIME VICTIM; AND

3. THE DEFENDANT KNEW HE WAS TRYING TO PREVENT OR TRYING TO DISCOURAGE, PREVENTING OR DISCOURAGING DENZEL WASHINGTON FROM MAKING A REPORT TO LAW ENFORCEMENT AND INTENDED TO DO SO.

A PERSON ACTS MALICIOUSLY WHEN HE OR SHE UNLAWFULLY INTENDS TO ANNOY, HARM, OR INJURE SOMEONE ELSE IN ANY WAY, OR INTENDS TO INTERFERE IN ANY WAY WITH THE ORDERLY ADMINISTRATION OF JUSTICE.

AS USED HERE, WITNESS MEANS SOMEONE OR A PERSON THE DEFENDANT REASONABLY BELIEVED TO BE SOMEONE:

WHO KNOWS ABOUT THE EXISTENCE OR NONEXISTENCE OF FACTS RELATING TO A CRIME;

A PERSON IS A VICTIM IF THERE IS REASON TO believe THAT A FederaL or STATE CRIME IS being or HAS been COMMITTED or ATTEMPTED AGAINST HIM OR HER.

IT IS NOT A defense THAT THE defendant was not SUCCESSFuL IN PREVENTING or discouraging THE VICTIM OR WITNESS.

IT IS NOT A defense THAT No one WAS ACTUALLY PHYSICALLY INJURED OR OTHERWISE INTIMIDATED.

THE PROSECUTION SUSTAINED iTS burden of PROVING EACH ELEMENT of THE CRIME. (PEOPLE V. KELLY (1992) 1 CAL. 4TH 995. 528; PEOPLE V. JOHNSON (1980) 26 CAL. 3d 557, 576-578; PEOPLE V. MATIAN (1995) 35 CAL. APP. 4TH 480, 483-484.) "SubSTANTIAL" EVIDENCE IS EVIDENCE of "PREPONDERABLE LEGAL SIGNIFICANCE REASONABLE IN NATURE; CREDIBLE, AND of Solid VALUE." To be "subsTANTIAL," THE EVIDENCE MUST REASONABLY INSPIRE CONFIDENCE. (PEOPLE V. MORRIS [1988) 46 CAL. 3d 1, 19; PEOPLE V. JOHNSON, SUPRA, 26 CAL. 3d AT P. 578.)

Additionally, THE PRESUMPTION OF INNOCENCE of THE due PROCESS CLAUSE of THE FourTEENTH AMENDMENT To THE UNITED STATES CONSTITUTION REQUIRES THAT THE PEOPLE PROVE EVERY ELEMENT of THE CRIME CHARGED, beyond A REASONAble doubt, To MORAL CERTAINTY. (SEE Penal Code SECTION 1096; SANDSTROM V. MONTANA (1978) 442 U.S. 510; 520 [99 S. CT. 2450; 61 L. Ed. 2d 39]; INTE WINSHIP (1970) 397 U.S. 358; 364 [90 S. CT. 1068. 25 L. Ed 2d 368].) IN DETERMINING WHETHER THIS burden WAS MET, THE TRIER OF FACT MUST HAVE REJECTED ALL THAT UNDERMINE CONFIDENCE. ACCORDINGLY, THE REVIEWING COURT CAN GIVE CREDIT ONLY To EVIDENCE THAT REASONABLY INSPIRES CONFIDENCE AND IS OF Solid VALUE. [INTE RODRIGUEZ P. (1972) 7 CAL. 3d 801; 809.)

1  AS WILL BE SHOWN, THERE WAS INSUFFICIENT SUBSTANTIAL EVIDENCE

2  THAT PETITIONER MALICIOUSLY TRIED TO PREVENT OR DISCOURAGE WASHINGTON

3  FROM MAKING A REPORT THAT HE WAS A VICTIM OF A CRIME TO LAW ENFORCE-

4  MENT. AS SUCH, PETITIONER'S CONVICTION IN COUNT 7 MUST BE REVERSED.

5

6  ## C. THERE WAS INSUFFICIENT EVIDENCE THAT PETITIONER

7  ## DISSUADED A WITNESS BY FORCE OR VIOLENCE

8  TO PROVE THAT PETITIONER VIOLATED PENAL CODE SECTION 136.1 SUBDIVISION

9  (c)(1) THE PROSECUTOR WAS REQUIRED TO PROVE: (1) PETITIONER MALICIOUSLY PRE-

10  VENTED OR DISCOURAGED OR ATTEMPTED TO PREVENT OR DISCOURAGE WASHINGTON

11  FROM MAKING A REPORT TO LAW ENFORCEMENT; (2) WASHINGTON WAS A WITNESS OR

12  CRIME VICTIM; (3) PETITIONER KNEW HE WAS PREVENTING OR DISCOURAGING, OR TRYING

13  TO PREVENT OR DISCOURAGE WASHINGTON FROM MAKING A REPORT TO LAW ENFORCEMENT

14  (4) PETITIONER ACTED MALICIOUSLY; AND (5) PETITIONER USED FORCE OR THREATENED, EITHER

15  DIRECTLY OR INDIRECTLY, TO USE FORCE OR VIOLENCE ON THE PERSON OR PROPERTY OF A

16  WITNESS, A VICTIM, OR ANY OTHER PERSON. (PEOPLE V. MENDOZA (1997) 59 CAL. APP.

17  4TH 1333; 1343; CALCRIM NOS. 2622 & 2623.)

18  IN THE INSTANT CASE, AFTER PETITIONER FIRED A SHOT AT WASHINGTON IN THE HALL-

19  WAY AND MISSED, WASHINGTON AND RODRIGUEZ WENT BACK INTO THE BEDROOM, AND

20  WASHINGTON TOLD RODRIGUEZ TO CALL THE POLICE. (10 RT 1541-1543; 11 RT 1578; 1671-

21  1612.) RODRIGUEZ GAVE THE 911 OPERATOR HER NAME AND ADDRESS AND SAID THAT SOME-

22  ONE WAS IN THE HOUSE WITH A GUN. (11 RT 1578.) AT THAT TIME, PETITIONER

23  WAS OUTSIDE IN THE HALLWAY, AND HE TOLD RODRIGUEZ TO HANG UP THE PHONE

24  AND THAT IF SHE CALLED THE POLICE, HE WAS GOING TO SHOOT HER "NIGGA." (10 RT 1543-

25  1544.) PETITIONER ALSO SAID THAT IF SHE CALLED THE POLICE, HE WAS GOING TO

26  SHOOT THE BOTH OF THEM, SO SHE HUNG UP THE PHONE. (10 RT 1543-1546; 11 RT

27  1582.)

28

1    AFTER WASHINGTON EXITED THE ROOM AND WAS SHOT TRYING TO DISARM PETITIONER,

2    PETITIONER ORDERED THEM TO LEAVE THE HOUSE. (10 RT 1547.) AS RODRIGUEZ AND

3    WASHINGTON WALKED DOWN THE STREET, SHE CALLED 911 AGAIN, BUT PETITIONER RODE UP

4    ON HIS BICYCLE AND SAID, "I KNEW YOU WOULD CALL THE POLICE", AND RODRIGUEZ SAID THAT

5    SHE WAS NOT ON THE PHONE, AND SHE AND WASHINGTON CONTINUED TO WALK AROUND THE

6    CORNER. (11 RT 1589-1591.)

7        BASED ON THE EVIDENCE PRESENTED, PETITIONER DID NOT MALICIOUSLY DISSUADE OR

8    ATTEMPT TO DISSUADE WASHINGTON FROM MAKING A REPORT TO LAW ENFORCEMENT,

9    WASHINGTON DID NOT TESTIFY AT TRIAL, AND HE DID NOT EVER ASSERT THAT HE TRIED TO MAKE

10   A REPORT TO LAW ENFORCEMENT OR THAT PETITIONER TRIED TO DISSUADE HIM FROM

11   MAKING A REPORT TO LAW ENFORCEMENT. PETITIONER'S COMMENTS WERE DIRECTED

12   AT RODRIGUEZ BECAUSE HE SUSPECTED THAT SHE WAS USING HER MOBILE PHONE TO

13   CONTACT THE AUTHORITIES. AS RODRIGUEZ TESTIFIED, PETITIONER ORDERED HER TO HANG

14   UP THE PHONE AND THAT IF SHE CALLED THE POLICE. (10 RT 1543-1546; 11 RT 1582.)

15       FURTHERMORE, WHEN PETITIONER RODE UP ON HIS BICYCLE, HE ONLY ACCUSED

16   RODRIGUEZ OF CALLING THE POLICE, AND SHE DENIED IT. (11 RT 1589-1591.) PETITIONER

17   SAID TO RODRIGUEZ, " I KNEW YOU WOULD CALL THE POLICE." AND RODRIGUEZ RE-

18   SPONDED THAT SHE WAS NOT ON THE PHONE, (11 RT 1589-1591.) EVEN IF THIS EXCHANGE

19   COULD SOMEHOW BE CONSTRUED AS AN ATTEMPT TO DISSUADE A WITNESS,

20   PETITIONER NEVER USED ANY THREATS OR FORCE, AND HE AGAIN DID NOT DIRECT

21   HIS COMMENTS TO WASHINGTON. PETITIONER ONLY SPOKE TO RODRIGUEZ, THE

22   VICTIM IN COUNT 6, AND HE DID NOT DISSUADE OR ATTEMPT TO DISSUADE

23   WASHINGTON FROM MAKING A REPORT TO LAW ENFORCEMENT. AS SUCH, PETITIONER'S

24   CONVICTION IN COUNT 7 SHOULD BE REVERSED.

25   ## D. CONCLUSION

26

27   THERE WAS INSUFFICIENT SUBSTANTIAL EVIDENCE TO PROVE THAT

28   PETITIONER DISSUADED WASHINGTON FROM MAKING A REPORT TO LAW ENFORCE-

1   MENT. BY FORCE OR THREAT. FINALLY, SINCE THE EVIDENCE TO SUPPORT THE VERDICT
2   IN COUNT 7 WAS INSUFFICIENT AS A MATTER OF LAW, FURTHER PROCEEDINGS SHOULD
3   BE BARRED BY THE double JEOPARDY CLAUSE. (U.S. CONST. FIFTH AMEND.
4   BURKS V. UNITED STATES (1978) 437 U.S. 1, 10-11 [98 S.CT. 2141, 57 L. Ed. 2d 1];
5   PEOPLE V. BROWN (1993) 20 CAL. APP. 4TH 1251, 1256; PEOPLE V. BELTON (1979) 23
6   CAL 3d 516, 527.)

7
8   III     THE TRIAL COURT ERRED IN SENTENCING
9           PETITIONER TO AN INDETERMINATE TERM
10          OF 302 YEARS TO LIFE BECAUSE THE SENTENCE
11          CANNOT BE SERVED IN HIS LIFETIME, IS
12          TANTAMOUNT TO LIFE WITHOUT THE
13          POSSIBILITY OF PAROLE, AND IS A LEGAL
14          FICTION WHICH CONSTITUTES CRUEL AND/
15          OR UNUSAL PUNISHMENT PURSUANT TO
16          THE FEDERAL AND STATE CONSTITUTIONS

17
18  A.  INTRODUCTION AND BACKGROUND

19      IN THIS CASE, PETITIONER WAS CONVICTED OF MULTIPLE FELONY OFFENSES
20  INVOLVING TWO VICTIMS, AND HE WAS 57 YEARS OLD AT THE TIME OF
21  SENTENCING.[8] HE HAD THREE PRIOR STRIKE CONVICTIONS, AND THE INDETERMI-
22  NATE SENTENCE OF 302 YEARS TO LIFE THAT HE RECEIVED PURSUANT TO THE
23  THREE STRIKES LAW RESULTED IN A SENTENCE THAT IS IMPOSSIBLE TO SERVE
24  IN HIS LIFETIME. THUS, DESPITE THE SENTENCE HAVING THE APPEARANCE OF THE
25  POSSIBILITY OF FUTURE PAROLE, IN REALITY, THERE IS NO SUCH POSSIBILITY.

26
27  8. PETITIONER WAS BORN ON JULY 31, 1961, AND HE WAS SENTENCE ON APRIL 9, 2019,
28  (CONF. CT 38, 4 CT 1036.)

PETITIONER SUBMITS THAT THE IMPOSITION OF A SENTENCE WITH A LEGAL POSSIBILITY OF PAROLE THAT IS IN REALITY IMPOSSIBLE TO SERVE IN A SINGLE LIFETIME BEFORE PAROLE ELIGIBILITY IS IN FACT A LIFE WITHOUT THE POSSIBILITY OF PAROLE (LWOP)[9] SENTENCE, AND CALLING IT ANYTHING ELSE IS CRUEL AND UNUSAL BECAUSE IT CREATES A LEGAL FICTION WHICH NECESSARILY WILL RESULT IN A PETITIONER DYING IN PRISON BEFORE HE BECOMES ELIGIBLE TO EVEN SEEK PAROLE.

THE INDETERMINATE SENTENCE 302 YEARS TO LIFE HEREIN CONSISTING VIOLATED THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE PROHIBITION AGAINST CRUEL OR UNUSAL PUNISHMENT UNDER ARTICLE 1, SECTION 17 OF THE CALIFORNIA CONSTITUTION. CALLING A SENTENCE SOMETHING "TO LIFE," WHEN IN REALITY IT COULD NEVER BE SERVED IN A PETITIONER'S LIFETIME SHOCKS THE CONSCIENCE. CALIFORNIA COURTS SHOULD NOT BE ALLOWED TO CALL A SENTENCE, SUCH AS THAT GIVEN HERE, AN INDETERMINATE SENTENCE WHEN, IN REALITY, THE SENTENCE IS NO DIFFERENT THAN LWOP. TRIAL COURTS SHOULD NOT BE ABLE TO IMPOSE SENTENCES THAT CANNOT BE SERVED BY A HUMAN BEING, WHICH APPEAR TO HAVE THE LEGAL POSSIBILITY OF PAROLE AT SOME TIME IN THE FUTURE, WHEN THOSE SENTENCES ARE NOTHING MORE THAN LWOP SENTENCES BEING LABELED AS SOMETHING ELSE.

THE CONSTITUTIONAL PROSCRIPTIONS AGAINST CRUEL AND/OR UNUSAL PUNISHMENT FORBID THAT WHICH IS "SO DISPROPORTIONATE TO THE CRIME FOR WHICH IT IS INFLICTED THAT IT SHOCKS THE CONSCIENCE AND OFFENDS FUNDAMENTAL NOTIONS OF HUMAN DIGNITY. LIN re LYNCH (1972) 8 CAL. 3d. 410, 424; IN re FOSS (1974) 10 CAL 3d 910, 919; PEOPLE V. DILLON (1983) 34 CAL. 3d 441, 476-489.) THE UNITED STATES SUPREME COURT HAS LONG RECOGNIZED THAT THE EIGHTH AMENDMENT APPLIES TO THE STATES THROUGH THE FOURTEENTH

9. PETITIONER DOES NOT ARGUE HEREIN THAT AN LWOP SENTENCE WOULD HAVE BEEN CRUEL AND UNUSAL BECAUSE IT WAS NOT IMPOSED AND IS THUS NOT RIPE FOR REVIEW, BUT HE DOES NOT WAIVE HIS RIGHT TO SO ARGUE AT RESENTENCING.

1  AMENDMENT. ( Robinson V. California (1962) 370 U.S. 660. 667.)

2  WHILE IT IS THE LEGISLATIVE'S ROLE IN THE FIRST INSTANCE TO DEFINE CRIMES

3  AND PRESCRIBE PUNISHMENT, THE LEGISLATURE'S AUTHORITY IS CIRCUMSCRIBED by

4  THE CONSTITUTIONAL PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT. (SEE

5  GRAHAM V. FLORIDA (2010) 560 U.S. 48 [130 S. CT. 2011; 176 L. Ed. 2d 825], Solem

6  V. HELM (1983) 463 U.S. 277, 290.

7  THE LAW IN THIS AREA IS IN A RAPID STATE OF CHANGE, AND THE UNITED

8  STATES SUPREME COURT CONTINUES TO EXPAND THE CATEGORIES OF SENTENCES

9  WHICH ARE DEEMED CRUEL AND UNUSUAL. IN RECENT YEARS, THE SUPREME

10  COURT HAS ALSO HANDED down A DECISION WHICH HOLDS ALL MANDATORY LIFE WITH-

11  OUT THE POSSIBILITY OF PAROLE SENTENCES IMPOSED ON JUVENILE OFFENDERS ARE

12  CRUEL AND UNUSUAL. ( Miller V. Alabama (2012) 567 U.S. 460 [132 S. CT.

13  2455) ( MILLER). AS THE UNITED STATES SUPREME COURT IN Miller Noted.

14  "[T]HE CONCEPT OF PROPORTIONALITY IS CENTRAL TO

15  THE EIGHTH AMENDMENT." 560 U.S. 48, 59. AND WE

16  VIEW THAT CONCEPT LESS THROUGH A HISTORICAL PRISM

17  THAN ACCORDING TO "THE EVOLVING STANDARDS OF

18  DECENCY THAT MARK THE PROGRESS OF A MATURING

19  SOCIETY." ESTELLE V. GAMBLE, 429 U.S. 97, 102 (1976)

20  (QUOTING TROP V. DULLES, 356 U.S. 86, 101 (1958)

21  ( PLURALITY OPINION).)

22  ( MILLER, SUPRA, 132 S. CT. AT 2463. QUOTING GRAHAM V. FLORIDA, SUPRA,

23  567 U.S. 48.) PETITIONER BELIEVES THAT EVOLVING STANDARDS OF DECENCY SHOULD

24  NOW RECOGNIZE THAT A SENTENCE WHICH IS IMPOSSIBLE TO SERVE IN A PETITIONER'S

25  LIFETIME bUT WHICH IS LABELED AS A "YEARS TO LIFE" SENTENCE IS CRUEL AND

26  UNUSUAL.

27  PETITIONER RECOGNIZES THAT THERE ARE DECISIONS WHICH HAVE Found IM-

28  POSSIBLE TO SERVE SENTENCES do TO NOT VIOLATE THE PROHIBITION ON CRUEL

and UNUSUAL. SENTENCES. ( SEE, e.g. <u>PEOPLE V. AYON</u> (1996) 46 CAL. APP. 4TH 385, 379
[240 YEARS To LIFE SENTENCE, THE FUNCTIONAL EQUIVALENT OF AN LWOP SENTENCE, did NOT
CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT]; <u>UNITED STATES V. SACCOCCIA</u> [1ST CIR,
1995) 58 F.3d 754, 786, FN, 38 [660 YEARS did NOT VIOLATE THE EIGHTH AMENDMENT, AND
THE dISTRICT COURT WAS NOT REQUIRED TO ATTEMPT TO ESTIMATE THE LENGTH OF THE PETITIONER'S
LIFE AND THEN FASHION A SENTENCE OF CORRESPONDING dURATION],) PETITIONER bELIEVES
THAT EVOLVING STANdARds OF dECENCY SHOULD REQUIRE OTHERWISE.

## B. <u>THIS COURT SHOULD REACH THE MERITS OF THIS ISSUE</u>

WHILE PETITIONER did NOT MAKE THE ARGUMENT bELOW THAT THE SENTENCE IMPOSED
VIOLATES THE PROHIBITION ON CRUEL AND UNUSUAL PUNISHMENT, HE did ARGUE THAT THE
SENTENCE WAS A "disGRACE TO JUSTICE" AND THAT IT WAS NOT FAIR TO IMPOSE THE dEATH
PENALTY IN A CASE SUCH AS THIS WHERE THERE WAS NO SPECIAL CIRCUMSTANCE ALLEGATION,
AND THE ISSUE SHOULD NOT bARRED ON APPEAL. [13RT 2197-2198.] THE QUESTION POSED HEREIN
IS NOT FACT-bASED. IT IS A LEGAL QUESTION: CAN TRIAL COURTS IMPOSE TERM OF YEAR SENTENCES
THAT ARE IMPOSSIBLE TO SERVE WITHOUT RUNNING AFOUL OF THE STATE AND FEDERAL CONSTITUTIONS?
MUST A SENTENCE THAT CANNOT bE SERVED bE CALLED LWOP OR MAY IT CONTINUE TO bE
CALLED SOMETHING LIKE THAT WHICH WAS IMPOSED HERE, "302 YEARS TO LIFE?"

ALTHOUGH PETITIONER IS RAISING THIS ISSUE FOR THE FIRST TIME ON APPEAL, HE
SUbMITS THAT THE WAIVER RULE CANNOT bE APPLIED TO A SENTENCE WHICH VIOLATES THE
FEdERAL CONSTITUTIONAL GUARANTEES AGAINST CRUEL AND UNUSUAL PUNISHMENT.
BY dEFINITION, SUCH A SENTENCE IS ONE WHICH "COULD NOT LAWFULLY bE IMPOSED UNdER
ANY CIRCUMSTANCE IN THE PARTICULAR CASE." AND IT IS SETTLED THAT THERE CAN bE NO
WAIVER bASED ON A FAILURE TO ObJECT TO SUCH A SENTENCE. ( PEOPLE V. NASALGA (1996)
12 CAL. 4TH 784, 789, FN. 4. CITING <u>PEOPLE V. SCOTT</u> (1994) 9 CAL. 4TH 331, 354.) AddITIONALLY,
A PARTY MAY RAISE FOR THE FIRST TIME ON APPEAL A PURE QUESTION OF LAW PRESENTED
bY UNdISPUTED FACTS, INCLUdING A CONSTITUTIONAL QUESTION OR AN ISSUE OF

1  IMPORTANT PUBLIC POLICY. (PEOPLE V. SUPERIOR COURT (GHILOTTI) (2002) 27 CAL.
2  4TH 888, 902, FN 5; HALE V MORGAN (1978) 22 CAL. 3d 388, 394; INRE
3  JASMINE C. (1999) 70 CAL. APP. 4TH 71, 78, FN. 3.)

4      SUCH AN ISSUE IS PRESENTED BY THE INSTANT CASE BECAUSE THE IMPOSITION OF A
5  SENTENCE THAT WOULD TAKE MORE THAN PETITIONER'S ENTIRE LIFETIME TO SERVE IS
6  EXCESSIVE AND SERVES NO VALID LEGISLATIVE PURPOSE.

7
8  C. __PETITIONER IS ENTITLED TO THIS COURT'S INDEPENDENT REVIEW__

9      CHALLENGES ON THE GROUNDS OF CRUEL AND UNUSUAL PUNISHMENT RAISE
10  QUESTIONS OF LAW AND ARE SUBJECT TO INDEPENDENT REVIEW BY THE APPELLATE COURT.
11  (PEOPLE V. ANDERSON (1972) 6 CAL. 3d 628, 641; PEOPLE V. MORA (1996) 39 CAL. APP.
12  4TH 607.) THIS COURT MUST INDEPENDENTLY REVIEW THE RECORD AND DETERMINE IF
13  PETITIONER'S SENTENCE AMOUNTS TO CRUEL AND UNUSUAL PUNISHMENT AS A MATTER OF
14  LAW.

15
16  D. __THE 302 YEARS TO LIFE SENTENCE WAS CRUEL AND__
17     __UNUSUAL BECAUSE IT IS EXCESSIVE AND SERVES NO__
18     __VALID LEGISLATIVE PURPOSE__

19      THE EIGHTH AMENDMENT TO THE FEDERAL CONSTITUTION APPLIES TO THE
20  STATES THROUGH THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT. (SEE
21  ROBINSON V. CALIFORNIA (1962) 370 U.S. 660, 675 [82 S.CT. 1417, 8 L.ED. 2d 758].)
22  THE EIGHTH AMENDMENT PROVIDES THAT "[E]XCESSIVE BAIL SHALL NOT BE REQUIRED, NOR
23  EXCESSIVE FINES IMPOSED, NOR CRUEL AND UNUSUAL PUNISHMENT INFLICTED." IN
24  SOLEM V. HELM, SUPRA, 463 U.S. 277, THE UNITED STATES SUPREME COURT FOUND
25  THAT A LIFE SENTENCE WITHOUT POSSIBILITY OF PAROLE FOR A SEVENTH NON VIOLENT
26  FELONY TO BE UNCONSTITUTIONAL UNDER THE EIGHTH AMENDMENT. A MAJORITY OF
27  THE COURT HELD A COURT'S PROPORTIONALITY ANALYSIS UNDER THE EIGHTH AMEND-
28  MENT SHOULD BE GUIDED BY OBJECTIVE CRITERIA, INCLUDING (i) THE GRAVITY OF THE

1 OFFENSE AND THE HARSHNESS OF THE PENALTY; (ii) THE SENTENCE IMPOSED ON OTHER

2 CRIMINALS IN THE SAME JURISDICTION; AND (iii) THE SENTENCES IMPOSED FOR THE

3 COMMISSION OF THE SAME CRIME IN OTHER JURISDICTIONS. [Id. AT P. 292.]

4 PETITIONER RELIES ON THE ANALYSIS OF JUSTICE MOSK IN HIS DISSENTING

5 OPINION IN <u>PEOPLE V. DELOZA</u> [1998] 18 CAL. 4TH 585, 600-603;

6

7 THE UNITED STATES SUPREME COURT HAS DECLARED THAT THE BASIC

8 CONCEPT UNDERLYING THE EIGHTH AMENDMENT IS NOTHING LESS

9 THAN THE DIGNITY OF MAN. WHILE THE STATE HAS THE POWER

10 TO PUNISH, THE AMENDMENT STANDS TO ASSURE THAT THIS

11 POWER BE EXERCISED WITHIN THE LIMITS OF CIVILIZED STAND-

12 ARDS [<u>TROP V. DULLES</u> (1958) 356 U.S. 86, 100, 78 S.CT. 590,

13 2 L ED 2d 630 (PLUR. OPN. OF WARREN, C.J.) THIS PROVISION IS AIMED

14 AT SOMETHING MORE THAN MERELY CURBING PUNISHMENT DESIGNED

15 TO INFLICT GREAT PHYSICAL PAIN. AS JUSTICE MARSHALL STATED,

16 ONE OF THE PRIMARY FUNCTIONS OF THE CRUEL AND UNUSUAL PUNISH-

17 MENTS CLAUSE IS TO PREVENT EXCESSIVE OR UNNECESSARY PENALTIES.

18 (<u>FURMAN V. GEORGIA</u> (1972) 408 U.S. 238, 331, 92 S.CT. 2726, 33

19 L. Ed. 2d 346 (CONC. OPN. OF MARSHALL, J.) HE FURTHER RECOGNIZED

20 THAT 'A PENALTY MAY BE CRUEL AND UNUSUAL BECAUSE IT IS EXCESSIVE

21 AND SERVES NO VALID LEGISLATIVE PURPOSE.' [Ibid] THE SAME IS TRUE

22 UNDER ARTICLE 1, SECTION 17 OF THE CALIFORNIA CONSTITUTION.

23 . . .

24 ONCE WE DECLARE CENTURY PLUS SENTENCES INVALID, I

25 AM CONFIDENT THAT THE LEGISLATURE WILL ACT TO PROVIDE APPRO-

26 PRIATE LIFE SENTENCES. SUCH SENTENCES WOULD SERVE THE PUR-

27 POSES OF PUNISHMENT, WOULD BE CONSTITUTIONAL, AND WOULD

28 AVOID MAKING THE JUDICIAL PROCESS APPEAR OBLIVIOUS TO

1  LIFE EXPECTANCY TABLES. (Mosk, STATE'S RIGHTS- AND WRONGS,
2  (1997) 72 N.Y.U. L. REV. 552, 556 - 559 [BRENNAN LECTURE].)

3

4  THE REASONING IN JUSTICE MOSK'S OPINION IS PARTICULARLY APPROPRIATE
5  IN THIS CASE. AN EXCESSIVE SENTENCE OF 302 YEARS TO LIFE IMPOSED ON A 51
6  YEAR OLD OFFENDER CAN SERVE NO RATIONAL LEGISLATIVE PURPOSE. UNDER EITHER
7  A RETRIBUTIVE OR A UTILITARIAN THEORY OF PUNISHMENT, IT IS GRATUITOUSLY
8  EXTREME AND DEMEANS THE GOVERNMENT INFLICTING IT AS WELL AS THE INDIVIDUAL ON
9  WHOM IT IS INFLICTED. SUCH A SENTENCE MAKES NO MEASURABLE CONTRIBUTION TO
10  ACCEPTABLE GOALS OF PUNISHMENT. ( PEOPLE V. DELOZA, SUPRA, 18 CAL. 4TH AT PP.
11  601-602, DIS. OPN. OF MOSK, J.)
12  THE SENTIMENTS EXPRESSED BY JUSTICE MOSK IN DELOZA ARE NOT THE
13  ISOLATED MUSINGS OF A SINGLE JURIST, RATHER, THEY ARE REFLECTED IN THE
14  OPINIONS OF THE JUSTICES OF THE UNITED STATES SUPREME COURT IN ADDRESSING
15  THE SCOPE AND PURPOSE OF THE CRUEL AND UNUSUAL PUNISHMENT CLAUSE. IN
16  FURMAN V. GEORGIA (1972) 408 U.S. 238, 331, [92 S. CT. 2726, 33 L. ED 2D 346]
17  JUSTICE MARSHALL NOTED IN HIS CONCURRING OPINION THAT ONE OF THE PRIMARY
18  FUNCTIONS OF THE CRUEL AND UNUSUAL PUNISHMENTS CLAUSE IS TO PREVENT EXCESSIVE
19  OR UNNECESSARY PENALTIES. IN THE SAME CASE, JUSTICE BRENNAN MADE A
20  SIMILAR OBSERVATION, STATING THAT:
21  THE FINAL PRINCIPLE INHERENT IN THE CLAUSE IS THAT A SEVERE
22  PUNISHMENT MUST NOT BE EXCESSIVE. A PUNISHMENT IS
23  EXCESSIVE UNDER THIS PRINCIPLE IF IT IS UNNECESSARY: THE
24  INFLICTION OF A SEVERE PUNISHMENT BY THE STATE CANNOT
25  COMPORT WITH HUMAN DIGNITY WHEN IT IS NOTHING MORE
26  THAN THE POINTLESS INFLICTION OF SUFFERING. IF THERE IS A
27  SIGNIFICANTLY LESS SEVERE PUNISHMENT ADEQUATE TO
28  ACHIEVE THE PURPOSES FOR WHICH THE PUNISHMENT IS INFLICTED,

1  Cf. Robinson v. California, supra, at 666; id., at 677
2  (Douglas, J., concurring); Trop v. Dulles, supra, at
3  (Brennan, J., concurring). The punishment inflicted
4  is unnecessary and therefore excessive (Id., at p. 279)

# VI
# CONCLUSION

8  The 302 years to life sentence imposed in the case at bar can
9  serve no rational legislative purpose such an outcome shocks the
10 conscience and offends fundamental notions of human dignity.
11 (People v. Ordonez (1991) 226 Cal. App. 3d 1207, 1236.) The conclusion is
12 inescapable a sentence of 302 years to life for a 57 year old
13 offender who committed no homicide is cruel and ususual punishment.
14 Therefore petitioner's sentence must be reversed and the matter re-
15 manded to the superior court. This court should set the sentence aside
16 and remand for resentencing based on a requirement that the
17 sentence imposed be one that provides for at least an opportunity for
18 parole within petitioner's life time.

# VII
# PRAYER FOR RELIEF

22 Petitioner is without remedy save by writ of habeas corpus.
23 Wherefore, petitioner prays the court;

24   1.  Issue a writ of habeas corpus;
25   2.  Declare the rights of the parties;
26   3.  Reverse the guilty finding and 302 year sentence;
27   4.  Appoint counsel and award reasonable attorney fees"
28       and;

1     5. GRANT ANY OTHER AND FURTHER RELIEF THE COURT deems

2         PROPER.

3

4  DATED: _____

5

6                    RESPECTFULLY SUBMITTED;

7

8  <u>DEMETRIC FRANK BAILEY JR #B.J6941</u>

9                     PETITIONER'S SIGNATURE

10

11

12            <u>VERIFICATION</u>

13  I, PETITIONER <u>DEMETRIS FRANK BAILEY JR</u>, STATE;

14     I AM THE PETITIONER IN THIS ACTION. I HAVE READ THE FOREGOING PETITION

15  <u>FOR WRIT OF HABEA CORPUS AND MEMORANDUM OF POINTS AND AUTHORITIES IN</u>

16  <u>SUPPORT THEREOF. 28 U.S.C. SECTION 2254 & 2255.</u> AND THE FACTS STATED

17  THEREIN ARE TRUE OF MY OWN KNOWLEDGE EXCEPT AS TO MATTERS THAT ARE

18  THEREIN STATED ON MY OWN INFORMATION AND BELIEF, AND TO THOSE MATTERS

19  I BELIEVE THEM TO BE TRUE.

20     I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND

21  CORRECT AND THAT THIS DECLARATION WAS EXECUTED AT RICHARD J. DONOVAN

22  CORRECTIONAL FACILITY. SAN DIEGO. ON_____,

23

24

25

26                  PETITIONER SIGNATURE

27                   #B.J6941

28                  CDCR NUMBER

## PROOF OF SERVICE BY MAIL

DEMETRIS FRANK BAILEY JR. CASE NO. _____

I DECLARE THAT:

    I AM A RESIDENT OF RICHARD J. DONOVAN CORRECTIONAL FACILITY, IN THE COUNTY OF SAN DIEGO, CALIFORNIA. I AM OVER THE AGE OF 18 YEARS. MY RESIDENCE ADDRESS IS: 480 ALTA ROAD, SAN DIEGO, CALIFORNIA 92179, ON APRIL ___, 2022. I SERVED THE ATTACHED PETITION FOR WRIT OF HABEAS CORPUS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF 28 U.S.C. SECTIONS 2254 & 2255, VERIFICATION, IN SAID CASE BY PLACING A TRUE COPY THEREOF ENCLOSED IN A SEALED ENVELOPE WITH POSTAGE THEREON FULLY PAID, IN THE UNITED STATES MAIL AT RICHARD J. DONOVAN CORRECTIONAL FACILITY ADDRESS AS FOLLOWS:

            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF CALIFORNIA
            2500 TULARE STREET
            FRESNO, CALIFORNIA 93721

    I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT, AND THAT THIS DECLARATION WAS EXECUTED ON THE DATE OF APRIL ___, 2002, AT SAN DIEGO, CALIFORNIA

DEMETRIS FRANK BAILEY JR #BJ0941                    _____
                                        SIGNATURE

**PROOF OF SERVICE BY MAIL**

(CCP §§1013(a), 2015.5; 28 U.S.C. §1746)

I, Demetrus Frank Bailey hereby declare that I am over the age of 18, I am the petitioner in the above-entitled cause of action, and my legal mailing address CSP-LAC _____-_____, P.O. Box 8457, Lancaster, CA 93539-8457.

On 9-30-22 , I delegated to prison officials the task of mailing, via the institution's internal mail system (Houston v. Lack, 487 U.S. 266 [101 L. Ed. 2d 245; 108 S. Ct. 2379] (1988)), the below entitled legal document(s):

UNITED STATES DISTRICT COURT
Writ of Habeas Corpus

by placing said documents in a properly addressed and sealed envelope, with postage fully prepaid, in the United States Mail, deposited in the manner provided by CSP-LAC, and addressed as follows:

U.S.D.C
Eastern District
2500 Tulare Street
Fresno Ca 93721

I further declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 30 day of September, 20 22 at the California State Prison - Los Angeles County.

L.D. Bailey L.